STATE EX REL. ESSER, Respondent, vs. McBRIDE and others, Appellants.

*April 2—June 26, 1934.*

For the appellants there was a brief by *Wm. A. Zabel,* district attorney of Milwaukee county, *O. L. O'Boyle,* corporation counsel, and *Clark J. A. Hazelwood,* assistant corporation counsel, and oral argument by *Mr. O'Boyle* and *Mr. Hazelwood.*

For the respondent there was a brief by *Carroll & Thekan,* attorneys, and *Ervin Levenson* of counsel, all of Milwaukee, and oral argument by *Mr. Levenson* and *Mr. George J. Carroll.*

A brief was also filed by *Herbert W. Cornell* of Milwaukee, chief examiner and secretary of the city service commission of Milwaukee, as *amicus curiæ.*

The following opinion was filed May 1, 1934:

FAIRCHILD, J. Charges against petitioner were filed by his superior officer with the Civil Service Commission of Milwaukee county. Due notice was given and a hearing was had. The commission sustained the charges and adjudged that the petitioner be permanently discharged as of November 30, 1932, from employment in the service of the Milwaukee County Department of Outdoor Relief as a

financial investigator. The court below reviewed the matter, set aside the decision of the commission, and ordered the reinstatement of petitioner to the position of financial investigator. This appeal presents only questions relating to whether the respondents, as commissioners constituting the Milwaukee Civil Service Commission, acted within the law creating that body and fixing its duties. If it did so act, no occasion can exist for the interference of a court. *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048; *State ex rel. Bluemound Amusement Park, Inc., v. Mayor,* 207 Wis. 199, 240 N. W. 847; *Hopkins v. Ames,* 344 Ill. 527, 176 N. E. 729.

When a proper complaint is made to the commission, time and place for a hearing are to be appointed, notice given, and after the hearing the commission is to determine whether or not the charge is well founded, "and shall take such action by way of suspension, demotion, discharge, or reinstatement, as it may deem requisite and proper under the circumstances and as its rules may provide." Sec. 16.38, Stats.

The petition on which relator challenged the proceedings of the commission seeks a review of the sufficiency of the evidence on which the findings of the commission were based. It is not claimed that the commission acted without evidence, but that "the evidence submitted . . . was insufficient to warrant a finding . . . that relator was incompetent and unable to efficiently carry out the duties . . . and that the act of the defendants in so discharging this relator is irregular, erroneous, illegal, void, unreasonable, arbitrary, unwarranted, contrary to the evidence and contrary to law and without authority." The trial court reviewed the record, and having reached the conclusion that "the evidence bearing upon Mr. Esser's alleged incompetency and inefficiency does not warrant his discharge," denied the motion of the commission to quash the writ and ordered Esser's reinstatement. This results in a judgment which is erroneous.

The primary purpose of civil service laws is to improve the efficiency of the public service. Provisions regulating the discharge of employees are enacted to prevent the disturbance of that service, not to benefit individuals who happen to be in service, except as it may give them the assurance of a recognition of faithful and capable conduct with a tenure more secure than existed under the system in vogue before civil service was so generally adopted. Inquiry has been made as to whether the administrative body has acted according to law in matters which bring before it the parties and the facts to be investigated. When it appears that the commission is acting within the field and using only such powers as are ascribed to it, it is performing a function of government in which its decisions are conclusive. The case of *Dickey v. Civil Service Comm.* 201 Iowa, 1135, 205 N. W. 961, quoted with approval the case of *Riley v. Crawford*, 181 Iowa, 1219, 165 N. W. 345, as follows:

"If the law were such that every order of discharge or suspension or other measure of discipline intended to insure prompt and faithful discharge of duty by employees and ministerial officers generally could be . . . set aside or nullified because the courts may disagree with the municipal authorities upon the merits of disputed questions of fact, discipline would be destroyed, and efficiency in public positions become a lost art."

It was also observed in the *Dickey Case,* and it is the accepted doctrine in this state, that wherever the statute has prescribed methods to be followed in investigating complaints against an employee and for removal from his position, the court is bound to protect him in his claim that the methods provided by law shall be substantially followed, but it will not assume to take to itself authority to try the merits of a charge which the statute has expressly delegated to municipal authorities.

The learned trial judge concluded that because no specified standard of conduct for the position held by Esser had been

fixed by any rule of the commission, that the result might be the subjecting of civil service employees to discharge at the whim and caprice of the commissioners. There is requirement in the civil service statute, sec. 16.37, Stats., for the devising and introducing "as rapidly and extensively as practicable a system of efficiency records. . . . After such system is introduced, the various departments thereby affected shall maintain it." It is unnecessary to determine the effect of this particular statute. It does not apply to the situation presented by this record. The work of the department grew rapidly. The gathering of information was an essential part of the report to be made by the investigator. Any failure to gather material information so as to require the doing of the work over again would constitute a lack of effectiveness which would place the work of the investigator below the rank of efficient.

If Esser needed an exact standard to guide him in gathering the required information, it was supplied when his attention was called to the defects in his reports, and each succeeding failure would be a falling below that standard. The department acquainted Esser with the occasion for the report, including the use to which it was to be put. This in itself fixed a standard, if one were necessary. The bringing in of partial information could not be a compliance with any reasonable understanding of efficiency.

The case of *State ex rel. Progreso D. Co. v. Brokers Board,* 202 Wis. 155, 231 N. W. 628, cited in the trial court's opinion, does not treat with facts similar to those involved in this case, and the decision of the Wisconsin Real Estate Brokers Board was reversed because the board acted outside of the specific powers granted by the statute and investigated a matter and formed a judgment which did not go to the trustworthiness of the broker who was seeking to renew his license. In the present case, the civil service commission, acting within the limitations specified by the statute, has devoted its attention to Mr. Esser's capabilities with re-

spect to the duties required of him and has found them wanting.

The superintendent of the department of outdoor relief, upon whose complaint against petitioner the civil service commission acted, made some statements not under oath, but the sworn evidence presented in support of the charges showed a failure on Mr. Esser's part to appreciate the importance of details in reporting the result of his investigations, that there was frequent occasion for additional work upon cases referred to him, and that his reports were incomplete with respect to sources from which income might be derived from families seeking relief. One of the supervisors of investigation for the department testified concerning one family investigated by Esser:

"Investigation made January 8, 1932. Mr. Esser's report describes the family's owning a duplex and living in the lower rooms, but failed to state what rent was being received from the upper flat, if any. The report notes a two-car garage in the rear, but Esser failed to check what income was received from that source. This required a re-investigation by another worker."

As another instance of failure to make a complete report it was testified concerning another case:

"Mr. Esser's report states that there is a building and loan mortgage on the home, but no statement is given as to the status of the payments thereon. Mr. Esser's report states that the front part of the building is used by friends as a soft-drink parlor, but Esser fails to report on the rent received for same or whether the family had an interest in that business."

Other instances similar to those just mentioned were described in the testimony.

These reports appear to have been completed later, but the failure on the part of Mr. Esser to appreciate the importance of acquiring such information and reporting it promptly in-

dicated, in the opinion of the commission, inefficiency or indifference to his work on his part, and their decision is controlling where they have acted within the limits of the authority conferred upon them by the legislature.

As has been suggested, the court below disagreed with the conclusion reached by the commission; but the weight of the evidence was strictly a question for the commission to determine. The opinion of the court contains the following:

"Mr. Glassberg, however, at the close of the hearing and without being sworn as a witness, offered a prepared statement in which he detailed somewhat at length the nature and complexity of the work of the D. O. R., traced its phenomenal growth and sought to justify his action in bringing charges against certain of his workers. Nowhere in the statement does Mr. Glassberg refer specifically to any act or deed on the part of Mr. Esser indicating inefficiency or incompetence on the part of the latter, nor any violation of any law or rule of the commission. The statement amounted, in effect, to a plea to make of Esser an example for the good of the service, inasmuch as there had been but little opportunity for a thorough check-up of the work of the department's many employees.

"The court feels that what was said by Mr. Glassberg as contained in the record of the hearing before the board may very likely have had some influence upon the decision of the commission, and, in view of the fact that Mr. Glassberg's statement was not made under oath, I am of the opinion that it was a matter of which the relator might well complain."

This circumstance can have no influence upon the decision by the court for the reason that there is sufficient evidence on which the commission could base its decision, outside of the comments offered by Mr. Glassberg. It may be said, however, that Mr. Glassberg was the complainant and his statements made were in the nature of an argument upon the evidence before the commission and the effect the evidence should have with them in forming their conclusions.

582

The record does not disclose a situation calling for the exercise of any reviewing power of the court under the writ of *certiorari,* and the writ should have been quashed.

*By the Court.*—Judgment reversed.

A motion for a rehearing was denied, with $25 costs, on June 26, 1934.