**JOSEPH P. JENKINS v. A. B. CURRY, as City Manager of Miami, et al.**

18 So. (2nd) 521                                                June Term, 1944
June 20, 1944                                                      Division B

*Bart A. Riley, A. C. Dressler* and *Riley & Dressler,* for appellant.

*J. W. Watson, Jr.,* for appellee.

THOMAS, J.:

The appellant secured from the circuit court an alternative writ of mandamus requiring the City of Miami, its manager, and its Director of Public Safety to reinstate him to his former position on the police force or to show cause why a peremptory writ should not issue. A motion to quash was presented, and the order granting it is challenged in this appeal.

The history of the procedure which culminated in the dismissal of appellant from the police force by the Director of Public Safety is revealed in the mandamus petition and its exhibits. The Chief of Police formally notified appellant that he was suspended for being so under the influence of intoxicating liquor while on duty as to render him unfit for service.

Here we pause to quote so much of Section 25 of the City Charter as outlines the disciplinary process where policemen of the City are involved. It provides that "The Chief of Police . . . shall have the . . . power to suspend any of the officers [of the force] . . . for . . . drunkenness. . . . If an

officer . . . be suspended . . . the Chief . . . shall forthwith in writing certify the fact together with the cause of suspension, to the Director of Public Safety, who shall after hearing, render judgment thereon, which judgment . . . may be a reprimand, fine, suspension, reduction in rank or dismissal. . . ."

In strict conformance to this procedure the chief certified to the Director of Public Safety the suspension of appellant, whereupon a hearing was conducted to determine whether the facts substantiated the charge. At this hearing the Chief of Police, the Chief of Detectives, the Captain of Detectives, and a captain of police all testified appellant was intoxicated when actually on duty. As a matter of fact, he was called to headquarters from his cruise in a patrol car and observed by them upon his arrival. His companion, a detective, was not so positive that appellant had reached the stage of drunkenness, but admitted that he appeared to have been drinking, although he had not seen him partake of alcoholic liquor during the nearly six hours they had been together. Sole refutation of the testimony against him was the appellant's story that he had taken whiskey and Empirin tablets the preceding night to relieve the pain from a sinus infection and had not imbibed the following morning.

There can be no doubt that the testimony abundantly established the charge that the appellant was in a drunken condition while acting as a police officer of the City of Miami. It could certainly not be said that there was not *any* substantial testimony upon which the ultimate order of dismissal could have been based. Hammond v. Curry (Fla.) 14 So. (2nd) 390.

The main attack here is directed at the admission of evidence of three other suspensions occurring as early as 1923 and as late as 1938 for neglect of duty, conduct unbecoming an officer, and drunkenness. Appellant insists that this evidence was incompetent and served no purpose save to prejudice the Director of Public Safety, who presided at the hearing. Even assuming that it was inadmissible, such evidence could not be considered harmful in view of the overwhelming testimony that the appellant was drunk at his post.

He was not in condition properly to perform his duties, and he richly deserved the punishment meted out to him. No policeman whose faculties are impaired by strong drink is fit to protect the public or prepared to cope with an emergency. Not only was his dismissal a proper punishment for his misconduct, but it also served as a warning to others who might entertain even a fleeting thought that they could go on duty inebriated and escape the consequences.

We do not believe, however, that the showing of former demerits was improper. It was shown that on three occasions appellant was disciplined. The first suspension of five days was imposed for neglect of duty, and several years later he pleaded guilty of inefficiency and was transferred from the detective to the uniform division. He was also suspended without pay for a short period and was "warned that if he [took] any more intoxicating liquor while on duty . . . it [would] mean his dismissal from the Department." Despite this admonition only two years passed before he was charged again with being drunk and asleep while on duty. For this misbehavior he was suspended for thirty days. So the experience of facing charges for drunkenness and other misconduct was not new to the appellant when he was hailed before the director and dismissed.

Appellant has cited a familiar rule that evidence of commission of crimes wholly unrelated to the one with which a defendant is charged may not be admitted. The rule is not applicable here. He was not charged with crime nor were the former incidents criminal prosecutions. The formalities in the introduction of testimony in a criminal prosecution need not, therefore, have been observed, McNiff v. City of Waterbury, 82 Conn. 43, 72 A. 572, 135 Am. St. Rep. 247; Etzler v. Brown, 58 Fla. 221, 50 So. 416, 138 Am. St. Rep. 113; nor the technical rules common to courts of justice invoked. Hawkins v. Grand Rapids, 192 Mich. 276, 158 N. W. 953. Am. Cas. 1917E 700.

The relevance of the challenged testimony becomes clear as the system of which this man was a part is studied. To obtain the position in the first place one's name must be included in the "list of eligibles" prepared by the Civil Service Board. In compiling this roster consideration is given to

merit, efficiency, character, and industry. Thus the career of a policeman begins, and as time passes, the advantages and protection of the Civil Service plan become a bulwark against interference, idleness, and discharge without cause. See State ex rel. Esser v. McBride, 215 Wis. 574, 254 N. W. 657. Doubtless his promotion is influenced largely, if not entirely by his record of efficiency, conduct, and seniority. The beneficiary of these privileges and securities must assume the responsibility of faithful service. The one complements the other.

It seems that under the system an incumbent's record becomes more valuable as his service lengthens. His tenure may not be interrupted except by formal charges eventually substantiated. As the quality of his service is unquestionably considered where a promotion is in prospect, so should the quality of it be studied when there is under consideration a demotion, suspension, or dismissal. If he expects to reap a reward for continued faithful service, to enjoy protection against removal without charges duly substantiated, he must expect, too, an examination of the history of this service when its faithfulness is called into question.

The judgment is affirmed.

BUFORD, C. J., BROWN, and SEBRING, JJ., concur.