553 So.2d 1260 (1989)
ADAM SMITH ENTERPRISES, INC., Appellant,
v.
STATE of FLORIDA DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee, and
Florida Electric Power Coordinating Group, Inc., West Coast Regional Water Supply Authority, Florida Land Council, Pasco County, and Concerned Citizens of Citrus County, Inc., Appellees/Intervenors below.
ALOHA UTILITIES, INC., Interphase Inc., Phase 1, Homes, Inc., A.C. & R., Inc., Tahitian Development, Inc., Great Cypress Mobile Home Village, Inc., and Barrington, Ltd., Appellants,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION and Environmental Regulation Commission, Appellees, and
Florida Electric Power Coordinating Group, Inc., West Coast Regional Water Supply Authority, Pasco County and Concerned Citizens of Citrus County, Inc., Appellees/Intervenors below.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellant,
v.
ALLIANCE FOR RATIONAL GROUND WATER RULES, INC., Adam Smith Enterprises, Inc., Aloha Utilities, Inc., Interphase, Inc., Phase 1 Homes, Inc., A.C. & R. Inc., Tahitian Development, Inc., Great Cypress Mobile Home Village, Inc., and Barrington, Ltd., Appellees.
Nos. 88-1223, 88-1224 and 88-1242.
District Court of Appeal of Florida, First District.
November 22, 1989.
Rehearing Denied January 10, 1990.
*1261 Chris H. Bentley of Rose, Sundstrom & Bentley, Tallahassee, for appellant/appellee Adam Smith Enterprises, Inc.
Martin S. Friedman of Rose, Sundstrom & Bentley, Tallahassee, for appellants/appellees Aloha Utilities, Inc., Interphase Inc., Phase 1 Homes, Inc., A.C. & R., Inc., Tahitian Development, Inc., Great Cypress Mobile Village, Inc., and Barrington, Ltd.
Cynthia K. Christen, Asst. Gen. Counsel, Dept. of Environmental Regulation, Tallahassee, for appellants/appellees Dept. of Environmental Regulation and Environmental Regulation Com'n.
William D. Preston of Hopping, Boyd, Green & Sams, for appellee/intervenor below Florida Elec. Power Coordinating Group, Inc.
Douglas M. Wyckoff of de la Parte, Gilbert & Gramovot, P.A., Tampa, for appellee/intervenor *1262 below West Coast Regional Water Supply.
Thomas W. Reese, St. Petersburg, for appellee/intervenor below Concerned Citizens of Citrus County, Inc.
NIMMONS, Judge.
This case involves consolidated appeals and cross appeals from a final order of the Division of Administrative Hearings (DOAH), invalidating certain provisions of the G-1 Rule proposed by the Florida Department of Environmental Regulation (DER) while upholding the validity of other provisions. We affirm.
In 1983, Concerned Citizens of Citrus County, Inc. (Concerned Citizens) filed a petition to initiate rulemaking for a single source reclassification of groundwater under the existing provisions of Florida Administrative Code Rule 17-3.403. In this manner, Concerned Citizens sought to have existent potable waters in Pinellas, Hillsborough, Pasco, Hernando and Citrus counties classified Class G-I groundwater, and to thereby impose the most stringent water quality protection accorded groundwaters of the state.
At a public meeting in February 1985, the Environmental Regulation Commission (ERC) deferred action on the petition of Concerned Citizens, and directed DER to review the existing G-I rule, prepare proposed revisions, and present its recommendation to the ERC.
Following the ERC directive, DER held numerous public meetings and workshops to explore different approaches to groundwater protection. As a consequence, it prepared proposed revisions to Rules 17-3.021, 17-3.403, 17-3.404, and 17-4.245, Florida Administrative Code.
In October 1986, DER published notice in the Florida Administrative Weekly of its intent to adopt these proposed rules. The notice also advised all interested parties that a public hearing would be held in December 1986 before the ERC.
In December 1986, the ERC held the public hearing at which time it considered the rules recommended by DER. During the course of this meeting, the ERC approved and adopted the rules with certain changes. These changes were duly noticed in the Florida Administrative Weekly.
In November 1986, timely petitions were filed against DER and ERC, pursuant to Section 120.54(4), Florida Statutes, challenging the validity of the proposed rules. These petitions were consolidated for hearing.[1] The issue for determination below was whether certain provisions of DER's proposed rules 17-3.021, 17-3.403, 17-3.404, and 17-4.245, constituted an invalid exercise of delegated legislative authority.[2]
DER is authorized under Section 403.061(10), Florida Statutes, to group the waters of the state into classes in accordance with their present and future most beneficial uses. This section also specifically allows DER to alter or modify its classifications after public hearing. The term "waters" includes groundwater.
In 1983, DER promulgated Florida Administrative Code Rule 17-2.403(1), which grouped groundwater into four classes, G-I through G-IV. Classes G-I and G-II are designated for potable water use, and Classes G-III and G-IV are designated for nonpotable water use.
The 1983 rule on Class G-I groundwater, approved by the ERC, limited that classification to groundwater in single source aquifers. Rule 17-3.403(1). Under the existing rule, the ERC could reclassify an *1263 aquifer or portions of an aquifer as G-I within specified boundaries upon a finding that:
1. The aquifer or portion of the aquifer is the only reasonably available source of potable water to a significant segment of the population; and
2. The designated use is attainable, upon consideration of environmental, technological, water quality, institutional, and social and economic factors.
The proposed modification greatly changes what a G-I classification entails. The changes would eliminate the single source requirement for Class G-I groundwater and replace it with new eligibility criteria for designation of an aquifer segment as Class G-I groundwater. Under the proposed revisions, an aquifer segment could be classified by the ERC as G-I provided it was:
within the zones of protection of a major public community drinking water supply well(s) or well field(s) withdrawing water from unconfined or from leaky confined aquifers... .
Proposed rule 17-3.403(7).
As with the existing rule, the proposed rules require that rulemaking procedures be followed to actually designate the G-I aquifer or aquifer segment at any particular location.
The scheme envisioned by the proposed rules is to provide protection to "major community drinking water supply wells" by preventing contaminants from entering the groundwater within a circumscribed radius of the wells. To accomplish this purpose, the proposed rules establish a methodology whereby two zones of protection would be established around such wells if they were withdrawing water from unconfined aquifer (an aquifer exposed to the atmosphere) or leaky confined aquifer (an aquifer in which groundwater moves vertically from the water table to the top of the aquifer in five years or less). The first zone (the inner zone) would be based on a fixed radius of 200 feet. The second zone (the outer zone) would be based on a radius, calculated under the rule's methodology ("r" formula), of five years groundwater travel time. Within the inner zone, discharges would be prohibited. Within the outer zone, certain developments which discharged to groundwater would be prohibited or restricted.
Proposed rules 17-3.403(7) and (8), respectively, set forth the eligibility criteria for reclassification as G-I aquifers and the methodology whereby the boundaries of the zones of protection are established. To this end, proposed Rule 17-3.403(7) provides:
Categories of G-I aquifers. For aquifers or aquifer segments to be eligible for potential reclassification as G-I aquifers one of the following criteria must be met:
(a) That the aquifer or aquifer segment under consideration be within the zones of protection of a major public community drinking water supply well(s) or wellfield(s) withdrawing water from unconfined aquifers or leaky confined aquifers ...
Proposed rule 17-3.403(8) provides:
Determination of the boundaries of the zones of protection.
(a) The boundaries of the zones of protection shall be based on radii from the wellhead or wellfield (if closely clustered, so that the five year zones of protection are overlapping) measured in 200 feet for the inner zone and five years for the outer zone. The radius of the outer zone shall be determined using the following formula:

 - -
 r = | QT |
 | _______ | 1/2
 | 3.14 hn |
 - -
where Q = permitted average daily flow from the
 well (measured in cubic feet per day);
 T = five years (1825 days);
 3.14 = mathematical constant pi;
 r = radius (feet);
 h = distance from the top of the producing
 aquifer to the bottom of the hole;
 n = effective porosity.
 For the purpose of this calculation the following effective
 porosities for representative Florida aquifers will
 be used:
 Floridan .05 Sand and Gravel .2
 Biscayne .15 Surficial .2

The Department shall use more site-specific values for "Q," "n," or "h" when available for designation of the zones of protection by the Commission.
*1264 The "r" formula defines the outer zone of protection, and calculates it as a radius equal to the distance groundwater would flow in five years toward the well. The element "T" in the "r" formula is defined as "five years (1825 days)." By its inclusion, DER proposed to circumscribe the outer zone of protection at five years groundwater travel time.
The concept of a zone of protection is premised on the theory that restrictions should be placed on discharges to groundwater within the area proximate to a public water supply for public health and safety concerns. The five-year standard, which is found throughout the rules, was based on the theory that if a contaminant was introduced to the groundwater, a period of time should be allowed to discover the contamination and remove it or make provision for an alternate water supply before the contaminant reached the public water supply.
In his final order, the hearing officer found that the five years proposed by the rule was arbitrary and capricious. As stated by the hearing officer:
77. During the workshop that underscored the proposed rule, the time factor was the subject of considerable discussion and ranged from less than two years to greater than ten years. Based on its own in-house search, the Department initially proposed a 10-year standard. That search revealed that it took 10 to 15 years between the time a contaminant was discovered and cleanup could commence, and between seven and eight years between the time a contaminant was introduced into groundwater and its discovery.
78. Notwithstanding the results of its own in-house search, the Department, in the face of debate, elected to "compromise" and propose a five-year standard. Such standard was not the result of any study to access its validity, and no data, reports or other research were utilized to derive it. In sum, the five-year standard was simply a "compromise" and was not supported by fact or reason.
The element "n" in the "r" formula is defined as "effective porosity." The term "effective porosity" refers to the ease with which a solute is transported through a material. The value ascribed to "n" is a critical value. It has a profound impact on the extent of the zone of protection. For example, assuming "Q" equals three million gallons and "h" equals 600 feet, an "n" of.02 would result in a radius of 1,400 acres, an "n" of .03 would result in a radius of 934 acres and an "n" of .05 would result in a radius of 560 acres. In other words, keeping all factors constant, the smaller the value of "n," the larger the perimeter of the zone of protection becomes.
The hearing officer concluded that the rule specification of an effective porosity of .05 for the Floridan aquifer was also arbitrary and capricious. As stated by the hearing officer:
72. The lithology [character of the rock formation] of an aquifer and the surrounding layers is varied and diverse, and directly affects the direction and velocity of groundwater flow. [The effective porosity of those materials in the Floridan aquifer can vary from .01 to .4 at various places.] By assuming a constant "n," the "r" formula ignores the varied lithology, and produces a radius that would seldom, if ever, represent the actual rate at which groundwater moved toward any well. The zone thus circumscribed is an illusion since the groundwaters and contaminants within it may move at a rate significantly greater than or less than 5 years travel time. Notably, the Department has conducted no study or test to validate its proposed methodology.
The hearing officer concluded that proposed rules 17-3.021(20), 17-3.403(5)(e)(2), 17-403(7) and 17-403(8)(a) did in fact constitute an invalid exercise of delegated legislative authority in that they were either vague, failed to establish adequate standards for agency decisions, vested unbridled discretion in the agency, or were arbitrary or capricious. The remaining challenged portions of DER's proposed G-I rule were found to comport with the essential requirements of law.
*1265 Several issues have been raised in the numerous appeals and cross appeals filed in the instant case.[3] However, we believe that only the issue raised in DER's direct appeal merits discussion. That issue is whether the hearing officer erred in finding that two factors of the radius "r" formula of the proposed G-I rule, namely, the five-year value for the perimeter of the outer zone of protection and the .05 value for the effective porosity of the Floridan Aquifer, are arbitrary and capricious. Critical to our determination of this issue is our determination of the more significant issue concerning the appropriate standard of review to be applied by an appellate court to the findings of a hearing officer arising out of a Section 120.54(4) rule challenge proceeding. DER and intervenor Concerned Citizens maintain that in reviewing a hearing officer's findings regarding the validity of an agency's proposed rule pursuant to a Section 120.54(4) rule challenge, the appropriate standard of review to be applied by the appellate court is whether there was competent substantial evidence before the agency to support its rule.
DER's and Concerned Citizens' argument illustrates the state of confusion which has surrounded the broader issue concerning the appropriate standard of review to be applied by this court to administrative appeals arising out of the rulemaking process. Resolution of the issue raised in the present appeal is dependent upon our resolution of this broader issue. We believe it will be helpful for us to examine in this opinion how the rulemaking process operates under Florida's Administrative Procedure Act (APA), the different avenues of judicial review which arise out of the rulemaking process, and the nature of the proceedings which occur during the rulemaking process from which judicial review is available.

I.
Rule adoption under Florida's APA is a complex process. It is a continuum of events culminating in the adoption of a rule when it is filed with the Secretary of State. In the first step of the process, the agency must draft the entire text of the proposed rule[4] and a supporting economic impact statement, initiated by either the agency itself or petition for rulemaking.[5] Next, the agency is required to give public notice of proposed rulemaking, both by distribution and publication. § 120.54(1)(a) and (b), Fla. Stat. (1987). This notice of the agency's intended action must set forth a short and plain explanation of the purpose and effect of the proposed rule, the specific legal authority under which its adoption is authorized, and a summary of the estimate of the economic impact of the proposed rule on all persons affected by it. § 120.54(1), Fla. Stat. (1987).
The agency is further required, as to rulemaking unrelated to organization, practice, and procedure, to give affected persons an opportunity to present evidence and argument on all issues under consideration appropriate to inform the agency of their intentions on any affected person's request which is received within 21 days after publication of the Section 120.54(1) notice. § 120.54(3)(a), Fla. Stat.[6] If affected *1266 persons submit evidence and argument without requesting a public hearing, the agency may choose whether to conduct such a hearing or to consider the submitted materials without holding a public hearing. However, if requested by any affected person, the agency must hold a public hearing on the rule.[7]
If a person participating in the rulemaking proceedings under Section 120.54(3) has substantial interests that will be affected by those proceedings, that person is entitled to a proceeding conducted in a manner which adequately protects his substantial interests. § 120.54(17), Fla. Stat.[8] If the rulemaking proceeding does not provide the necessary procedural protection and if the agency agrees with the asserting person that the procedures are not adequate to protect his substantial interests, the person may be permitted to "draw out" of the rulemaking proceeding and to have commenced a separate proceeding conducted in accordance with Section 120.57. If a separate proceeding is commenced, upon its conclusion the rulemaking proceeding is required to be resumed. § 120.54(17), Fla. Stat.
Furthermore, a party is entitled to have the agency rule on his assertion that the procedures are inadequate. The failure of the agency to exercise its discretion in this regard is subject to immediate judicial review. See Bert Rogers Schools of Real Estate v. Florida Real Estate Commission, 339 So.2d 226 (Fla. 4th DCA 1976). However, the denial by an agency of a request to suspend a Section 120.54(3) rulemaking hearing and convene a Section 120.57 proceeding, as provided in Section 120.54(17), is not final agency action. Neither is it intermediate action cognizable under Section 120.68(1). Corn v. Department of Legal Affairs, 368 So.2d 591 (Fla. 1979).
Florida's APA also provides for challenges to proposed rules under Section 120.54(4).[9] Section 120.54(4) entitles "[a]ny substantially affected person" to seek "an administrative determination of the invalidity of any proposed rule on the ground that the proposed rule is an invalid exercise of delegated legislative authority." The phrase "invalid exercise of delegated legislative authority," as used in Chapter 120, is now statutorily defined. Chapter 87-385, Section 2, amended Section 120.52 by adding the following subsection defining "invalid exercise of delegated legislative authority" as follows:
(8) "Invalid exercise of delegated legislative authority" means action which goes beyond the powers, functions, and duties delegated by the Legislature. A proposed or existing rule is an invalid exercise of delegated legislative authority if any one or more of the following apply:

*1267 (a) The agency has materially failed to follow the applicable rulemaking procedures set forth in s. 120.54;
(b) The agency has exceeded its grant of rulemaking authority, citation to which is required by s. 120.54(7);
(c) The rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(7);
(d) The rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency; or
(e) The rule is arbitrary or capricious.
Procedurally, the request seeking the determination must be in writing and filed with DOAH within 21 days after the Section 120.54(1) notice of hearing is filed. The writing must state with particularity the provisions challenged with sufficient facts and explanation in support of the request and facts sufficient to show that the person challenging would be substantially affected. § 120.54(4)(b), Fla. Stat.
Within ten days of receipt, if the division director determines that the petition has complied with the above requirements, a hearing officer must be assigned to conduct a hearing within 30 days thereafter and shall render a decision with reasons in writing 30 days after the hearing. § 120.54(4)(c), Fla. Stat. Other substantially affected persons can join or intervene unless there would be substantial delay. § 120.54(4)(d), Fla. Stat.
All or part of the rule may be declared invalid by the hearing officer. The proposed rule or part of the proposed rule declared invalid must be withdrawn by the agency and cannot be adopted. In the event part of a proposed rule is declared invalid, the agency may, in its discretion, withdraw the proposed rule in its entirety. § 120.54(4)(c), Fla. Stat. While the Section 120.54(4) proceeding is pending, the agency may continue with its rulemaking procedures but cannot adopt the rule. No rule shall be filed until 28 days after the Section 120.54(1) notice is published or until the hearing officer has rendered his decision. Notice of a decision declaring a proposed rule invalid must be published in the first available issue of the Florida Administrative Weekly. § 120.54(4)(c), Fla. Stat.
Furthermore, as a legislative check on legislatively created authority,[10] an agency is required to file proposed rules with the Administrative Procedures Committee[11] at least 21 days prior to the proposed adoption, subject to certain exceptions. To facilitate committee review, Section 120.54(11) requires agencies to file a copy of the proposed rule, a justification statement, a federal standards statement, an economic impact statement, and a copy of the Section 120.54(1) notice. Section 120.54(11)(a), Florida Statutes, provides in relevant part as follows:
(11)(a) The adopting agency shall file with the committee, at least 21 days prior to the proposed adoption date, a copy of each rule it proposes to adopt; a detailed written statement of the facts and circumstances justifying the proposed rule; a copy of the estimate of economic impact required by subsection (2); a statement of the extent to which the proposed rule establishes standards more restrictive than federal standards or a statement that the proposed rule is no more restrictive than federal standards or that a federal rule on the same subject does not exist; and the notice required by section (1).
Pursuant to Section 120.545, the Administrative Procedures Committee is required to examine each proposed rule, with some exceptions, and may examine any existing rule, for the purpose of determining whether:
(a) The rule is an invalid exercise of delegated legislative authority;
(b) The statutory authority for the rule has been repealed;
(c) The rule reiterates or paraphrases statutory material;
(d) The rule is in proper form;

*1268 (e) The notice given prior to its adoption was sufficient to give adequate notice of the purpose and effect of the rule; and
(f) The economic impact statement accompanying the rule is adequate to accurately inform the public of the economic effect of the rule.
The committee has no power to nullify a proposed rule or an existing rule, but the committee can issue objections, which can affect the subsequent conduct of the rulemaking proceeding. § 120.545(2), Fla. Stat. An objection to the proposed rule, if not responded to by the agency, effectuates a withdrawal of the proposed rule. § 120.545(6), Fla. Stat.
After these procedures have run their course, the agency once more enjoys procedural freedom, as far as the APA is concerned, when making the final decision to adopt a rule. Section 120.54(11)(b) requires the rule and supporting materials to be filed, as the culmination of the rulemaking process.[12] A proposed rule is adopted upon being filed with the Department of State and is effective 20 days thereafter or as specified in the rule or by the statute. § 120.54(13), Fla. Stat. While the agency enjoys only a limited right to adopt a rule that differs from the proposed rule, the agency is completely free to withdraw the proposed rule and embark on completely new rulemaking proceedings with a different proposed rule. § 120.54(13)(b), Fla. Stat.

II.
For agency action arising out of the rulemaking process, there are essentially two primary avenues of judicial review permitted under the APA: (1) direct appeal from an agency's adopted rule; and (2) appeal from a hearing officer's final determination arising out of a rule challenge proceeding pursuant to either Section 120.54(4) or 120.56.
Section 120.68, the governing statute on judicial review under the APA, provides in relevant part:
(1) A party who is adversely affected by final agency action is entitled to judicial review... .
(2) Except in matters for which judicial review by the Supreme Court is provided by law, all proceedings for review shall be instituted by filing a petition in the district court of appeal... .
The APA, of course, defines reviewable final agency action in several instances. Rules are adopted and considered "final agency action" when they are filed with the Department of State, although they are not effective until 20 days after being filed, and as such are subject to judicial review under Section 120.68. See § 120.54(13)(a), Fla. Stat.; § 120.52(2), Fla. Stat. ("agency action" includes both orders and rules entered or adopted by the agency); § 120.68(5)(b), Fla. Stat. (record for judicial review shall include "materials considered by the agency under § 120.54, if review is sought of proceedings under that Section"); Florida Administrative Commission v. District Court of Appeal, First District, 351 So.2d 712 (Fla. 1977) (the filing of rules with the Department of State is "final agency action" for purposes of computing the time for seeking judicial review); City of Key West v. Askew, 324 So.2d 655 (Fla. 1st DCA 1975) (court expressly stated that adoption of a rule constitutes final agency action subject to judicial review); 4245 Corporation, Mother's Lounge, Inc. v. Division of Beverage, 348 So.2d 934, 936 (Fla. 1st DCA 1977) (court held that rulemaking itself constitutes final agency action which an adversely affected party may judicially challenge by a timely petition for review, §§ 120.52(2), (14), 120.54, 120.68(1), and, upon the Division's adoption of the proposed rule, petitioners as parties to the rulemaking proceedings would be entitled to judicial remedies under the APA); Postal Colony Co., Inc. v. Askew, 348 So.2d 338 *1269 (Fla. 1st DCA 1977), aff'd sub nom. Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978); Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979); Brewster Phosphates v. State, Department of Environmental Regulation, 444 So.2d 483 (Fla. 1st DCA 1984); Booker Creek Preservation, Inc. v. Southwest Florida Water Management District, 534 So.2d 419 (Fla. 5th DCA 1988) (issue of authority for direct appeal addressed in f.n. 1, wherein the court held: "This is a direct appeal from an agency's final action consisting of rulemaking. See § 120.54 (the Administrative Procedure Act), Fla. Stat. (1987). We have jurisdiction, Fla.R.App.P. 9.030(b)(1)(c).").
Further, the hearing officer's determination on a challenge to a proposed or adopted rule is final agency action under Sections 120.54(4)(d) and 120.56(5), and as such is subject to judicial review by either the agency or the challenging party under Section 120.68(1). See 4245 Corporation, Mother's Lounge, Inc. v. Division of Beverage, 348 So.2d 934 (Fla. 1st DCA 1977).
Moreover, the failure to elect to challenge a proposed rule as provided for in Section 120.54(4), or an adopted rule under 120.56, does not constitute a failure to exhaust administrative remedies so as to frustrate the institution of a direct appeal from an agency's adopted rule. § 120.54(4)(d), Fla. Stat.[13]; § 120.56(5), Fla. Stat.; Postal Colony Co., Inc. v. Askew, 348 So.2d 338 (Fla. 1st DCA 1977) (failure to pursue administrative proceedings under Sections 120.54(4)(d) and 120.56(5) to challenge rules as invalid exercise of delegated legislative authority did not constitute a failure to exhaust administrative remedies); see also General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984); Booker Creek Preservation, Inc. v. Southwest Florida Water Management District, 534 So.2d 419 (Fla. 5th DCA 1988); and Brewster Phosphates v. State, Department of Environmental Regulation, 444 So.2d 483 (Fla. 1st DCA 1984). In these latter two cases, the Florida Supreme Court and this court entertained direct appeals from an agency's final action of adopting a rule without requiring the rule challengers to have pursued administrative remedies via Sections 120.54(4) or 120.56(1).
The right to seek a determination of the validity of a proposed or adopted rule before a hearing officer is nothing more than an optional administrative alternative provided by the APA. See §§ 120.54(4)(a) and 120.56(1), Fla. Stat. (both of these statutes indicate that substantially affected persons "may seek an administrative determination of the invalidity" (e.s.) of a rule or proposed rule); see also State ex rel. Dept. of General Services v. Willis, 344 So.2d 580, 590 (Fla. 1st DCA 1977) (the APA provides an "impressive arsenal of varied and abundant remedies for administrative error").

III.
The standard of review to be applied by this court to administrative appeals arising out of the rulemaking process is dependent upon the route by which the administrative appeal reaches us. The standard of review to be applied on a direct appeal from an adopted agency rule, arising out of the rulemaking proceedings under Section 120.54(3), is different from the standard to be applied on an appeal from a hearing officer's determination arising out of a Section 120.54(4) or 120.56 rule challenge proceeding. Essential to a determination of the appropriate standard of review to be applied by this court to administrative appeals arising out of the rulemaking process is an understanding of the nature of the administrative proceedings that occur below.
Agency rulemaking pursuant to statutory authorization is a quasi-legislative *1270 function, and the scope of appellate review thereof is more limited than that with respect to quasi-judicial action. Brewster Phosphates v. State, Department of Environmental Regulation, 444 So.2d 483, 486 (Fla. 1st DCA 1984); Booker Creek Preservation, Inc. v. Southwest Florida Water Management District, 534 So.2d 419 (Fla. 5th DCA 1988); Broward County v. Administration Commission, 321 So.2d 605 (Fla. 1st DCA 1975); Polk v. School Board of Polk County, 373 So.2d 960, 962 (Fla. 2nd DCA 1979); General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984). The proceedings which culminate in the adoption of an agency's rule are generally legislative in nature, and are not adversarial. These proceedings consist of the agency's informal rulemaking proceedings conducted pursuant to Section 120.54(3)(a)[14].
Proceedings conducted pursuant to Section 120.54(3)(a) are not the same type of proceedings as are provided under Section 120.57 when an agency determines the substantial interests of a party. The rights of a particular individual are not adjudicated in this type of proceeding. Rather, Section 120.54(3) rulemaking proceedings are information-gathering proceedings, much like legislative committee proceedings where testimony is heard, which proceedings are relatively informal. The purpose of the rulemaking proceedings authorized by Section 120.54(3) is twofold: (1) to allow the agency to inform itself about the positions and problems of those who seek to present evidence and argument; and (2) to allow the public and others with particular interest in or information about the proposed rule to participate in the formulation of agency policy. See Balino v. Department of Health and Rehabilitative Services, 362 So.2d 21 (Fla. 1st DCA 1978). The intention of the Section 120.54(3) proceeding is to facilitate the exchange of information and not to be restrictive through the technical use of evidentiary rules. Such proceedings are designed to inform an agency to its fullest, and are not intended to adjudicate any issues or to be conducted in an adversarial manner. General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984).
What emerges from the agency's informal rulemaking proceedings is an informal "administrative record" which is in fact capable of judicial review. The administrative record that comes before the appellate court on a direct appeal from an adopted rule will generally consist of the following: (1) the agency's initial proposal, its tentative empirical findings, important advice received from experts, and the description of the critical experimental and methodological techniques on which the agency intends to rely; (2) the written or oral replies of interested parties to the agency's proposals and to all the materials considered by the agency; and (3) the final rule accompanied by a statement both justifying the rule and explaining its normative and empirical predicates. See §§ 120.54(3)(a), (6) and (11)(a), Fla. Stat.; § 120.68(5)(b), Fla. Stat.
The standard of judicial review to be applied by the appellate court when there is this kind of informal administrative record arising from an agency's informal rulemaking proceeding has never been clearly articulated in the case law and has been the source of much confusion. DER and Concerned Citizens suggest that an agency's rulemaking proceedings are to be reviewed under a competent substantial evidence standard[15], i.e. as long as an agency's rule *1271 is supported by competent substantial evidence, the rule must be upheld.
However, DER and Concerned Citizens fail to recognize that the record produced during informal agency rulemaking does not lend itself to such an evidence-weighing process. An informal rulemaking record often contains soft information which is difficult for the court to weigh and which is less reliable than that which is found in formal proceedings wherein evidentiary safeguards are applicable.
The record in informal rulemaking often contains generalized rather than specific information, evidence that is untested by cross-examination, and conclusory information based upon data submitted by interested parties. In addition, rulemaking decisions frequently turn on policy considerations which do not easily lend themselves to the test of substantial evidence. Moreover, because an informal record includes the written submissions of any interested party, it may be voluminous and technically complex and disorganized. Naturally, an informal record of this sort cannot be reviewed in quite the same way as a formal adjudicatory record in which the issues are refined and the positions of the parties clearly delineated. See General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984) (Supreme Court recognized that the "standard of review for a quasi-legislative proceeding must differ from that for a quasi-judicial proceeding, as a qualitative, quantitative standard such as competent and substantial evidence is conceptually inapplicable to a proceeding where the record was not compiled in an adjudicatory setting and no factual issues were determined"); Booker Creek Preservation, Inc. v. Southwest Florida Water Management District, 534 So.2d 419 (Fla. 5th DCA 1988) (court found that in a case involving a direct appeal from a newly adopted agency rule, "there really is no competent and substantial evidence presented below for us to review, nor findings of fact determined by a board or hearing officer"); see also Brewster Phosphates v. State, Department of Environmental Regulation, 444 So.2d 483 (Fla. 1st DCA 1984).
Accordingly, the standard of review applicable to a direct appeal from an agency's quasi-legislative rulemaking function is, as articulated by the Florida Supreme Court in General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063, 1067 (Fla. 1984), as follows:
"Where the empowering provision of a statute states simply that an agency may `make such rules and regulations as may be necessary to carry out the provisions of this act,' the validity of the regulations promulgated thereunder will be sustained as long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious." (e.s.)

Agrico Chemical Co. v. State, Department of Environmental Regulation, 365 So.2d 759 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979); Florida Beverage Corp. v. Wynne, 306 So.2d 200 (Fla. 1st DCA 1975).
The arbitrary and capricious standard of review as applied to informal rulemaking proceedings is a less stringent standard for rulemakers than the competent substantial evidence standard which is applied to formal *1272 adjudicatory quasi-judicial proceedings. See General Telephone Co. of Florida, supra, at 1063 (judicial review of rulemaking, a quasi-legislative proceeding, is more limited than that of a quasi-judicial proceeding); Booker Creek Preservation, Inc., supra; Broward County v. Administration Commission, 321 So.2d 605 (Fla. 1st DCA 1975); Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979); see also Abbott Laboratories v. Gardner, 387 U.S. 136, 143, 87 S.Ct. 1507, 1512, 18 L.Ed.2d 681 (1967) (stating that the substantial evidence test affords a considerably more generous judicial review than the arbitrary and capricious test). Defining a standard of review less stringent than a competent substantial evidence standard is no easy task.[16] However, an examination of federal law is instructive in defining this arbitrary and capricious standard. Section 706(2)(A) of the Federal APA prescribes the "arbitrary and capricious" test as the basic standard for judicial review of informal rulemaking and the more rigorous "substantial evidence" standard as the one applicable for review of formal, adjudicatory rulemaking.[17] In its landmark decision in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court sought to define an acceptable standard of review of informal agency action. In Overton Park, the Supreme Court held that the arbitrary and capricious standard applied to judicial review of an informal decision by the Secretary of Transportation to expend federal funds to finance the construction of a highway through a public park. The Court rejected the petitioner's argument that the substantial evidence standard applied. The Court recognized that the hearing provided for under the statute was not adjudicatory, was quasi-legislative in nature, and was not intended to produce an evidentiary record  the basic requirement for substantial evidence review. Accordingly, because of the procedures involved, the Court applied the narrow arbitrary and capricious test to the Secretary of Transportation's decision.
The Court stated that when reviewing agency action under the arbitrary and capricious standard:
[T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to *1273 be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.
401 U.S. at 416, 91 S.Ct. at 823.[18]
We believe that under this arbitrary and capricious standard, then, an agency is to be subjected only to the most rudimentary command of rationality. The reviewing court is not authorized to examine whether a rulemaker's empirical conclusions have support in substantial evidence. Rather, the arbitrary and capricious standard requires an inquiry into the basic orderliness of the rulemaking process, and authorizes the courts to scrutinize the actual making of a rule for signs of blind prejudice or inattention to crucial facts.
Accordingly, in applying the arbitrary and capricious standard to an agency's informal rulemaking proceedings, the reviewing court must consider whether the agency: (1) has considered all relevant factors; (2) has given actual, good faith consideration to those factors; and (3) has used reason rather than whim to progress from consideration of these factors to its final decision.
This arbitrary and capricious standard of review is nothing more than an inquiry into the realities of the rulemaking process. Such review is possible on the informal administrative record that comes before this court. A proper record will reflect all of the relevant views and facts considered by the rulemaker, from whatever source, and will reveal if and how the rulemaker considered each factor throughout the process of policy formation.[19]
Should the reviewing court determine that the agency has failed to satisfy this standard, the remedy is of course to remand the rule. But such remand is only to allow the agency, through fuller explanation, to show that the rulemaking process was actually motivated by reason rather than blind instinct. We do not suggest that the agency need take more submissions from outsiders, or that adjudicatory procedures are required. In applying this standard of review, the focal point should be on the administrative record already in existence. See Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).
Whereas a rulemaking proceeding pursuant to Section 120.54(3)(a) is quasi-legislative in nature and as such is subject to an arbitrary and capricious standard of review, a rule challenge proceeding pursuant to either Section 120.54(4) or 120.56 is quasi-judicial in nature and as such is subject to a competent substantial evidence standard of review. Hearings under Sections 120.54(4) and 120.56 are conducted in the same manner as adjudicatory hearings under Section 120.57.[20] §§ 120.54(4)(d)[21] *1274 and 120.56(5), Fla. Stat. Because they are adjudicatory, the rule challenge proceedings are controlled by the standard set forth in Section 120.68(10), Florida Statutes:
(10) If the agency's action depends on any fact found by the agency in a proceeding meeting the requirements of s. 120.57, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record.
Moreover, contrary to DER's assertions, it is the hearing officer's findings which are being reviewed by this court under the above standard  not the agency's rules. The hearing officer's determination regarding a challenge to a proposed rule constitutes final agency action under Section 120.54(4)(d), and as such is subject to judicial review under Section 120.68(1).[22]See 4245 Corporation, Mother's Lounge, Inc. v. Division of Beverage, 348 So.2d 934 (Fla. 1st DCA 1977).
In summary, when reviewing a hearing officer's determination arising out of either a Section 120.54(4) or 120.56 quasi-judicial rule challenge proceeding, the appellate court's standard of review is whether the hearing officer's findings are supported by competent substantial evidence. § 120.68(10), Fla. Stat.[23] On the other hand, when reviewing on direct appeal an agency's adopted rule arising from a quasi-legislative rule enactment proceeding conducted pursuant to Section 120.54(3)(a), the appellate court's standard of review is that the rule should be sustained as long as it is reasonably related to the purposes of the enabling legislation and is not arbitrary or capricious. General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984).[24]
*1275 The record in this case fully supports the view that there is competent substantial evidence to support the hearing officer's findings that two of the factors used by DER in its radius formula, namely, the five-year value for the perimeter of the outer zone of protection and the .05 value for the effective porosity of the Floridan Aquifer, are arbitrary and capricious. We have examined the remaining issues raised in the various appeals and cross appeals filed in this case and find them to be without merit.
Accordingly, the hearing officer's order validating some and invalidating other portions of DER's proposed G-I rule is AFFIRMED.
BARFIELD and MINER, JJ., concur.
NOTES
[1] These petitions were filed by Adam Smith Enterprises, Inc. and Alliance For Rational Groundwater Rules, and Aloha Utilities, Inc.; Interface, Inc.; Phase I Homes, Inc.; A.C. & R., Inc.; and Barrington, Ltd. Petitions for leave to intervene were granted on behalf of Florida Electric Power Coordinating Group, Inc., Florida Land Counsel, Inc., and Pasco County. These intervenors' interests were aligned with those of petitioners. Petitions for leave to intervene were also granted on behalf of West Coast Regional Water Supply Authority and Concerned Citizens. These intervenors' interests were aligned with those of DER and ERC.
[2] The portions of the proposed rules actually challenged were subsections 17-3.021(7)(10)(16)(17)(20)(21)(34)(35) and (39); 17-3.403(1), (2), (5)(e), (6), (7) and (8); 17-3.404(3); and 17-4.245(2)(a)(1), (2)(b)(1) and (3).
[3] DER, whose rule was successfully challenged, filed its appeal on May 16, 1988. Adam Smith Enterprises, Inc. (Adam Smith) and Aloha Utilities, Inc., et al. (Aloha), filed their appeals on May 17, 1988. Both subsequently filed cross appeals in DER's case on May 26, 1988. DER, on May 31, 1988, filed a cross appeal in both the Adam Smith and Aloha appeals. Concerned Citizens also filed a cross appeal on June 1, 1988 in the appeals filed by Adam Smith and Aloha.
[4] The APA establishes no particular procedure to be followed by an agency during the original drafting of the proposed rule. The drafting sessions of a collegial agency head or committee appear to be "workshops" or "meetings" subject to the requirements of Section 120.53(1)(d). These workshops or meetings provide a significant opportunity for comment prior to the formal proposal of rules.
[5] Section 120.54(5) allows any person regulated by an agency or substantially interested in an agency rule to petition an agency to adopt, amend or repeal a rule. Within 30 days, the agency must initiate rulemaking proceedings or deny the petition in writing.
[6] Section 120.54(3)(a), Florida Statutes, provides:

(3)(a) If the intended action concerns any rule other than one relating exclusively to organization, procedure, or practice, the agency shall, on the request of any affected person received within 21 days after the date of publication of the notice, give affected persons an opportunity to present evidence and argument on all issues under consideration appropriate to inform it of their intentions... . The agency may schedule a public hearing on the rule and, if requested by any affected person, shall schedule a public hearing on the rule. Any material pertinent to the issues under consideration submitted to the agency within 21 days after the date of publication of the notice or submitted at a public hearing shall be considered by the agency and made a part of the record of the rulemaking proceeding.
[7] While these provisions offer ample opportunity for public comment as to the merits of a proposed rule, they all occur after the proposed rule has been drafted. Modification of proposed rules as a result of any comment received pursuant to these provisions is governed by Section 120.54(13)(b), Florida Statutes.
[8] Section 120.54(17), Florida Statutes, provides:

(17) Rulemaking proceedings shall be governed solely by the provisions of this section unless a person timely asserts that his substantial interests will be affected in the proceeding and affirmatively demonstrates to the agency that the proceeding does not provide adequate opportunity to protect those interests. If the agency determines that the rulemaking proceeding is not adequate to protect his interests, it shall suspend the rulemaking proceeding and convene a separate proceeding under the provisions of s. 120.57. Similarly situated persons may be requested to join and participate in the separate proceeding. Upon conclusion of the separate proceeding, the rulemaking proceeding shall be resumed.
[9] Section 120.56 provides for a similar challenge against an existing rule.
[10] See Section 120.545, Florida Statutes.
[11] This committee, along with its membership, powers, and duties, is described in Section 11.60, Florida Statutes.
[12] Section 120.54(11)(b), Florida Statutes, provides in relevant part:

(b) If the adopting agency is required to publish its rules in the Florida Administrative Code, it shall file with the Department of State three certified copies of the rule it proposes to adopt, a summary of the rule, a summary of any hearings held on the rule, and a detailed written statement of the facts and circumstances justifying the rule.
[13] Section 120.54(4)(d), Florida Statutes, provides:

(d) Hearings held under this provision shall be conducted in the same manner as provided in s. 120.57 except that the hearing officer's order shall be final agency action... . Failure to proceed under this subsection shall not constitute failure to exhaust administrative remedies.
This language is identical to the language used in Section 120.56(5).
[14] Section 120.54(3)(a) provides as follows:

(3)(a) If the intended action concerns any rule other than one relating exclusively to organization, procedure, or practice, the agency shall, on the request of any affected person received within 21 days after the date of publication of the notice, give affected persons an opportunity to present evidence and argument on all issues under consideration appropriate to inform it of their contentions... . The agency may schedule a public hearing on the rule and, if requested by any affected person, shall schedule a public hearing on the rule. Any material pertinent to the issues under consideration submitted to the agency within 21 days after the date of publication of the notice or submitted at a public hearing shall be considered by the agency and made a part of the record of the rulemaking proceeding.
[15] In DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957), the Supreme Court, per Justice Thornal, described the meaning of the term "competent substantial evidence" as follows:

We have used the term "competent substantial evidence" advisedly. Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Becker v. Merrill, 155 Fla. 379, 20 So.2d 912; Laney v. Board of Public Instruction, 153 Fla. 728, 15 So.2d 748. In employing the adjective "competent" to modify the word "substantial," we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed. Jenkins v. Curry, 154 Fla. 617, 18 So.2d 521. We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the "substantial" evidence should also be "competent."
See also Gould v. Division of Florida Land Sales and Condominiums, 477 So.2d 612, 616 (Fla. 1st DCA 1985); 1 Fla.Jur.2d Administrative Law, § 86.
[16] It is important to maintain the distinction between a competent substantial evidence standard of review and an arbitrary and capricious standard of review for agency rulemaking. To impose a competent substantial evidence standard of review on agency rulemaking would force rulemakers to adopt more formal, rigid, trial-like procedures in an attempt to make an adequate record capable of judicial review. A general paralysis of administration would result, and rulemaking would lose most of its peculiar advantages as a tool of administrative policy making. Trial-like adjudication would be extremely costly in time, staff, and money. Orderly innovation would be difficult. To discern basic agency policy, the public would often have to wade through volumes of scarcely relevant testimony and findings. Especially in the rapidly expanding realms of economic, environmental, and energy regulation, the policy disputes are too sharp, the technological considerations too complex, and the interests affected too numerous to require agencies to rely on the ponderous workings of adjudication.
[17] 5 U.S.C. § 706(2). Section 706 states in pertinent part:

The reviewing court shall 
* * * * * *
(2) hold unlawful and set aside agency action, findings and conclusions found to be 
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
* * * * * *
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute... .
Sections 556 and 557 of the federal APA provide for trial-type adjudications and formal rulemaking. Formal procedures provide for a hearing, use of the rules of evidence, and cross-examination of witnesses. Informal (or notice-and-comment) rulemaking involves minimal procedures. The agency publishes a notice of the proposed rulemaking in the Federal Registry containing the time, place and nature of the proceedings, the legal authority for the proposed rule, and either the substance of the proposed rule or some of the issues involved. 5 U.S.C. § 553 (b). Interested parties then have the opportunity to submit written comments and data. In some cases, oral presentations may be allowed. Id. § 553(c).
[18] This language is equally applicable to informal rulemaking proceedings.
[19] Formalized adjudicatory methods are clearly nonessential for purposes of rational rulemaking. There are procedures set forth in Section 120.54 expressly designed to provide the administrator access to all data, criticisms, suggestions, alternatives, and contingencies relevant to his decisions. Adjudicatory methods are in fact insufficient to this task. A rulemaker must typically make and coordinate many empirical conclusions dependent on raw material outside the conventional evidentiary categories of "testimony" and "exhibits." For example, the rulemaker must often draw upon prior experience, expert advice, the developing technical literature, ongoing experiments, or seasoned predictions.

As for the consideration given to these factors, a rulemaker can demonstrate his seriousness and good faith without allowing interested parties to cross examine him or quarrel orally before him. He can, for instance, through his "justification" statement, detail for the court the actual attention he gave to the factors, and explain his final disposition with respect to each of them.
[20] Since the proceeding is conducted in the manner of a Section 120.57 adjudicatory proceeding,

[a]ll parties shall have an opportunity to respond, to present evidence and argument on all issues involved, to conduct cross-examination and submit rebuttal evidence, to submit proposed findings of facts and orders, to file exceptions to any order or hearing officer's recommended order, and to be represented by counsel. When appropriate, the general public may be given an opportunity to present oral or written communications. If the agency proposes to consider such material, then all parties shall be given an opportunity to cross-examine or challenge or rebut it.
§ 120.57(1)(b)(4), Fla. Stat. (1987). Moreover, as provided in Section 120.58(1)(a):
(1) In agency proceedings for a rule or order:
(a) Irrelevant, immaterial, or unduly repetitious evidence shall be excluded, but all other evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs shall be admissible, whether or not such evidence would be admissible in a trial in the courts of Florida. Any part of the evidence may be received in written form, and all testimony of parties and witnesses shall be made under oath. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. This paragraph applies only to proceedings under s. 120.57.
[21] Section 120.54(4)(d) provides in pertinent part:

Hearings held under this provision shall be conducted in the same manner as provided in s. 120.57 except that the hearing officer's order shall be final agency action. The agency proposing the rule and the person requesting the hearing shall be adversary parties ...
[22] Section 120.68(1) provides in pertinent part:

(1) A party who is adversely affected by final agency action is entitled to judicial review... .
[23] DER and Concerned Citizens maintain that the hearing officer's standard of review, in determining the validity of an agency's rule pursuant to a Section 120.54(4) rule challenge, is to determine if the agency had competent substantial evidence upon which to base its rule. However, just as an agency's Section 120.54(3)(a) quasi-legislative rulemaking proceeding is not susceptible to a competent substantial evidence standard of review upon a direct appeal from an agency's adopted rule, it is not susceptible to such a standard upon a Section 120.54(4) administrative rule challenge before a hearing officer. Rather, in determining the validity of an agency's rule, the hearing officer's standard of review is whether the rule constitutes an invalid exercise of delegated legislative authority, as that phrase is defined in Section 120.52(8), Florida Statutes. See Section 120.52(8) which is reproduced in Part I of this opinion, supra.

One of the criteria that a hearing officer may consider in determining the validity of an agency's proposed rule is whether the rule is arbitrary or capricious. § 120.52(8), Fla. Stat. However, contrary to DER's suggestion, whether a rule is arbitrary or capricious is not dependent on whether the rule is supported by competent substantial evidence. As previously established, the arbitrary and capricious and competent substantial evidence standards of review are two distinct standards, and their applicability in a given case is dependent on the nature of the proceeding under review.
[24] As support for its position that both the hearing officer, in a Section 120.54(4) proceeding, and this court, when reviewing the hearing officer's determination in a Section 120.54(4) proceeding, are to determine whether the agency had competent substantial evidence upon which to base its rule, DER cites Agrico Chemical Co. v. State, Department of Environmental Regulation, 365 So.2d 759 (Fla. 1st DCA 1978). Such reliance is misplaced. In Agrico, the issue before the court was whether the hearing officer had applied the proper burden of proof upon a claim that a proposed rule was arbitrary or capricious. In upholding the validity of the proposed rule, the hearing officer had concluded that the burden was on the petitioners to demonstrate that the rule was "so totally unfounded as to be completely beyond reason." This court held that the hearing officer had applied a more onerous burden on the petitioners than that required by law. The court held that the degree of proof required by a challenger in demonstrating that agency action is arbitrary or capricious is by a preponderance of the evidence, a less stringent standard than that imposed by the hearing officer.

DER has relied on the following language in Agrico to support its position on this appeal:
Both the hearing officer (acting in a quasi-judicial capacity) and this Court should determine from the evidence presented whether or not there is competent, substantial evidence to support the validity of the rule.
365 So.2d at 763. Such statement was not essential to the holding in Agrico and is therefore merely dictum. More importantly, we believe this language is illustrative of the confusion which has permeated this issue concerning the appropriate standard of review that is to be applied to an agency's rulemaking process. Subsequent to the Agrico decision, the Florida Supreme Court and various district courts in this state have attempted to resolve much of this confusion and have established that the rulemaking proceedings relied upon by an agency in making its rules are not susceptible to a competent substantial evidence standard of review. See General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984); Booker Creek Preservation, Inc. v. Southwest Florida Water Management District, 534 So.2d 419 (Fla. 5th DCA 1988); Brewster Phosphates v. State, Department of Environmental Regulation, 444 So.2d 483 (Fla. 1st DCA 1984).