578 So.2d 376 (1991)
The UNITED STATES SHOE CORPORATION, PRECISIONS LENSCRAFTERS DIVISION; Pearle Vision, Inc.; and Cole Vision Corporation, Appellants,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF OPTICIANRY, Appellee.
No. 90-1554.
District Court of Appeal of Florida, First District.
April 11, 1991.
David D. Eastman, Ronald A. Labasky, Patrick J. Phelan of Parker, Skelding, Labasky & Corry, Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., Theresa M. Bender, Asst. Atty. Gen., for appellee.
PER CURIAM.
The appellants, corporate entities who operate retail optical establishments and provide opticianry services, filed a Section 120.54(4), Florida Statutes, rule challenge *377 to determine the invalidity of a proposed rule promulgated by the Department of Professional Regulation, Board of Opticianry (Board).
The proposed rule, Rule 21P-16.002(3), Florida Administrative Code, relates to qualifications of sponsors for apprentice opticians. Rule 21P-16.002, FAC, currently states:
21P-16.002 Qualifications of Apprentices and Sponsors. Apprentices and sponsors for apprenticeship programs must meet the following qualifications:
(1) An apprentice must be at least 17 years old at the date of application; must submit a complete application for apprenticeship along with proof of having obtained a qualified sponsor; and must submit the registration fee specified in Rule 21P-11.013.
(2) A sponsor must be an optician, a physician or an optometrist licensed in this state, whose license is not subject to any current disciplinary action; must be actively engaged in the practice of the qualifying profession; and must provide the equipment set forth in Rule 21P-10.007 on the premises of any establishment in which apprentices are trained.
The proposed rule makes no changes to paragraphs (1) and (2) but adds a new paragraph which states:
(3) No optician, physician or optometrist may serve as a sponsor unless he actually dispenses eyewear and maintains the required equipment on the same premises where the apprentice works. For example, an optician, physician or optometrist whose premises and equipment are distinct from the intended apprentice's work area cannot serve as a sponsor, even though the optician's, physician's or optometrist's premises are within the same office area or building.
Chapter 484, Florida Statutes (1989), is the controlling statute for the practice of opticianry. According to Section 484.001, the purpose of the statute and the rules implementing the statute is to protect the health, safety, and welfare of the public from the incompetent practice of opticianry. This can be accomplished, according to the legislature, by establishing minimum qualifications for entry into the profession and through swift and effective discipline for those practitioners who violate the law.
At the hearing on the rule challenge, neither party offered live testimony. Instead, depositions of the Board's Executive Director, an optician and former member of the Board, and several managers employed by the appellants were submitted.
The Board's Executive Director testified that the proposed rule was enacted because sponsors were not properly supervising the apprentices. The Director also testified that the Board felt the proposed rule would force the physicians, optometrists, and all opticians to have the proper equipment in order to properly supervise the apprentices. Regarding the proposed requirement that sponsors actually dispense eyewear, the Board's director testified that the Board felt that unless one is actually dispensing eyewear, he is not qualified to train someone else to perform that function.
With regard to the proposed rule's requirement that sponsors maintain the required equipment on the same premises where the apprentice works, the Board's director testified that the provision means a sponsor would be responsible for the upkeep of the equipment used by the apprentice.
The Board's expert witness had a different explanation for the purpose and meaning of the proposed rule. In his view, the effect of the proposed rule was to enable the Board to consistently apply the rules and disciplinary actions instituted thereunder so as to regulate sponsors not directly under the Board's supervision.
As to the proposed rule's requirement of maintaining equipment, the Board's expert stated that it means sponsors would have to make sure the equipment is physically on the premises and have access to it. The expert opined that the apprentice's work area would be where the frames, instruments and equipment are kept. Regarding the proposed rule's requirement that the sponsor's premises and equipment cannot *378 be distinct from the apprentice's work area, the expert stated that the physician, optometrist or optician, in order to serve as a sponsor, would have to perform his or her functions in the apprentice's work area.
The testimony of the appellant's witnesses indicate the work area requirements will result in substantial mandatory modifications to some of the existing retail outlets which provide a variety of optical services. The building modifications would be, at the very least, cost prohibitive and, in some instances, impossible due to existing lease agreements between the corporation and their landlords.
In his findings of fact, the hearing officer noted that the appellants, though not licensed to perform opticianry services, employ opticians and apprentice opticians and have a contractual relationship with licensed optometrists who often act as sponsors.
The hearing officer also noted that the appellants' retail establishments have separate areas for optometry services and dispensing eyewear, and a laboratory for lens preparation which areas are separated by a wall of glass or other solid, opaque substance.
The hearing officer interpreted the requirement that sponsors maintain equipment on the same premises where the apprentice works to mean that a sponsor must own the equipment or otherwise be responsible for the provision of it. The hearing officer acknowledged that the requirement may effectively prohibit opticians and optometrists employed by the appellants from serving as sponsors if those employees do not own or are otherwise not responsible for providing the required equipment on their employer's premises.
The hearing officer also found that the testimony presented by the appellants supports the finding that the proposed rule change shall require at least some alteration of the physical arrangement at some of the appellants' retail establishments if the apprenticeship programs are to be continued in their businesses.
In spite of his findings, the hearing officer concluded that the requirements that a sponsor should actually dispense eyewear, maintain required equipment on the same premises where the apprentice works, and directly supervise the apprentice in the performance of his duties is consistent with and rationally related to the statutory purpose of educating and training an apprentice on some basic level of competence in the practice of opticianry and assuring the protection of public health, safety and welfare. We disagree.
Prior to the proposed rule, Rule 21P-16.002(2), FAC (previously quoted herein), required a sponsor to be a licensed optician, physician, or optometrist, and to be actively engaged in the practice of the qualifying profession. Most importantly, the existing rule also stated that a sponsor must provide the equipment mandated by the rules on the premises of any establishment in which apprentices are trained.
In addition, Rule 21P-16.003(5), FAC, which addressed the apprenticeship requirements and the training program, set out the supervisory duties of sponsors. The rule states that in order for the apprentice to be awarded credit for hours worked under the supervision of the sponsor, the sponsor must be on the premises at all times that opticianry services are performed by an apprentice. Further, the sponsor must personally inspect and approve any work produced by an apprentice.
It is clear that the proposed rule does not resolve the concerns expressed by the Board's director and the expert witness  concerns which ostensibly provided the impetus for the promulgation of the proposed rule. The Board's director stated that the proposed rule was promulgated to correct a deficiency in the program whereby apprentices were not being properly supervised by sponsors. The expert witness stated that the proposed rule was promulgated in order to provide consistent disciplinary measures for those sponsors who are monitored under a separate set of rules for that profession. The practical effect of the rule, however, is devastating to the appellants. As the witnesses for the appellants *379 testified and the hearing officer noted, the proposed rule will require building modifications which are either cost prohibitive or impermissible under existing leases. Additionally, the proposed rule will prevent any physician, optometrist or optician from serving as a sponsor unless that professional "actually dispenses eyewear."
Pursuant to Section 120.54(4), Florida Statutes (1989), any substantially affected person may seek an administrative determination of the invalidity of any proposed rule on the ground that it is an invalid exercise of delegated legislative authority. Under Section 120.52(8), a proposed rule is an invalid exercise of delegated legislative authority if the rule enlarges, modifies, or contravenes the specific provisions of law implemented; the rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency; or the rule is arbitrary or capricious.
According to Adam Smith Enterprises, Inc. v. State, Department of Environmental Regulation, 553 So.2d 1260 (Fla. 1st DCA 1989):
[W]hen reviewing a hearing officer's determination arising out of ... a Section 120.54(4) ... rule challenge proceeding, the appellate court's standard of review is whether the hearing officer's findings are supported by competent substantial evidence.
Id. at 1274.
The hearing officer's finding that the proposed rule is reasonably related to the statutory purpose of the rule's governing sponsors and apprentices and assures the protection of the public health, safety, and welfare, is unsupported by competent substantial evidence. The proposed rule constitutes an invalid exercise of delegated legislative authority. No statutory authority supports the imposition of these types of proposed physical restrictions on sponsors to carry out the supervision required by the statute; as a matter of law the proposed rule amendment goes beyond the Board of Opticianry's delegated legislative powers under Chapter 484.
The hearing officer's conclusions of law in the final order identify Sections 484.005 and 484.007(1)(d), Florida Statutes (1989), as the statutory authority for the proposed rule amendment under review. The pertinent language in Section 484.005, relied on in the order, authorizes the Board to promulgate rules "to protect the health, safety and welfare of the public." This provision and the language in Section 484.007(1)(d)4 authorizing the Board "to establish administrative processing fees sufficient to cover the costs of administering apprentice rules as promulgated by the board" are sufficient, according to the order, to "clearly empower Respondent [Board] to adopt the rule which is the subject of this proceeding." The conclusions of law further state that "Both provisions empower Respondent to make rules which it deems necessary to implement standards and guidelines for licensure by apprenticeship." In effect, the hearing officer's order construes the statutory provisions as giving the Board practically unlimited authority to make whatever rules it considers necessary to accomplish the broad purposes stated in Section 484.005.
We find nothing in these statutory provisions, however, that authorizes the Board to require supervising sponsors to perform the specific functions set forth in the proposed amendment. There is no statutory authority for prohibiting an optician, physician, or optometrist from serving as a sponsor "unless he actually dispenses eyewear and maintains the required equipment on the same premises where the apprentice works," so that "an optician, physician or optometrist whose premises and equipment are distinct from the intended apprentice's work area cannot serve as a sponsor, even though the optician's, physician's or optometrist's premises are within the same office area or building." Section 484.005 sets forth the Board's authority to make rules and identifies four specific categories relating to standards of practice and so forth, which are considered to be reasonably related to the conferred rulemaking power. While these categories are not intended to be exclusive, none of them suggests a delegated power to impose the physical restraints *380 on a sponsor's supervisory activities of the nature contained in the proposed rule. On the other hand, Section 484.006 makes it clear that the rulemaking power granted in Section 484.005 is substantially circumscribed, as that section sets forth six specific areas in which the Board is prohibited from making any rules.
That the proposed amendment to the rule exceeds delegated legislated authority is evident upon consideration of other provisions in Chapter 484 in pari materia with the specific provisions relied on by the hearing officer. Section 484.007(1) contains general requirements for licensure to practice opticianry, and specifically provides in subparagraph (d)4 that a person who has registered as an apprentice may meet the requirements for taking the examination for licensure by serving an apprenticeship "for not less than 3 years of 40-hour workweeks under the supervision of an optician, a physician, or an optometrist licensed under the laws of this state." It further provides that "the apprenticeship need not be of a continuous nature" but that "the 3-year requirement must be completed within a 5-year period from the date of registration." This subparagraph then authorizes the Board to "establish administrative processing fees sufficient to cover the cost of administering apprentice rules as promulgated by the board." Undoubtedly, the Board has delegated power to make rules setting criteria and standards of training activities for apprenticeship programs, and can set reasonable requirements for supervision by the designated sponsors.
Of significant import regarding the extent of such supervision, however, is the provision in Section 484.002(5) defining "Direct supervision" as "supervision where the licensee remains on the premises while all work is being done and gives final approval to any work performed by an employee." For reasons not readily apparent, this definition is not mentioned anywhere in the hearing officer's final order. This definition emphasizes two elements: one, that the supervisor remain on the premises while all work is being done, and two, that the supervisor give final approval to any work performed by an employee. The stringent requirements for supervision imposed by the proposed amendment are inconsistent with this definition. The provision requiring final approval of the work would be superfluous if the requirement to remain on the premises meant on premises in direct visual contact at all times. To infer that supervision of apprentices can only be performed under physical conditions when the supervisor is or must be in direct visual contact with the supervised apprentice at all times is an irrational and arbitrary extension of the statutory definition. It also should be noted that Section 484.007(1)(d)4 speaks only in terms of "supervision," not "direct supervision," further suggesting that a sponsor's general supervision with final checking and approval of work performed, not constant physical presence of the supervising sponsor at all times, is all that is contemplated by the statute.
Moreover, the definition of "opticianry" in Section 484.002(3) also is inconsistent with any reasonable implication of authority for the Board to require that the sponsor have the ability to observe the apprentice at all times. Opticianry is defined as "the preparation and dispensing of lenses, spectacles, eyeglasses, contact lenses, and other optical devices to the intended user or agent thereof, upon the written prescription of a medical doctor or optometrist who is duly licensed to practice... ." Opticianry also includes "the duplication of lenses accurately as to power, without prescription." That section further provides, however, that such things as the "selection of frame designs, the actual sales transaction, and the transfer of physical possession of lenses, spectacles, eyeglasses, contact lenses, and other optical devices subsequent to performance of all services of the optician shall not be considered the practice of opticianry; however, such physical possession shall not be transferred until the optician has completed the fitting of the optical device upon the customer." It is evident from this description of the various functions *381 essential to the operation of an "optical establishment"[1] that not all functions need be performed, or are even contemplated to be performed, in a single room, or that all such functions need be supervised by an optician or other supervisor at all times. The critical element in the practice of opticianry is that the preparation and dispensation of the described optical devices be adequately performed, checked and fitted before final transfer of possession to the intended user.
In summary, no reasonable construction and application of the pertinent statutory provisions in Chapter 484 supports the restrictions on supervision imposed by the proposed amendment to the rule. The proposed amendment goes beyond any authority in the organic statutory law governing the Board's exercise of power and thus is an invalid exercise of delegated legislative authority because it clearly enlarges and contravenes the specific provisions of the statutory authority being implemented. § 120.52(8), Fla. Stat. (1989).
We have also considered the appellants' issue concerning an alleged error in the standard of review relied upon by the hearing officer and find the same to be without merit. Further, in view of our holding herein regarding the validity of the subject rule, we need not reach the economic impact statement issue.
Accordingly, the final order is REVERSED.
ERVIN, NIMMONS and ZEHMER, JJ., concur.
NOTES
[1] Defined in Section 484.002(7) to mean "any establishment in the state which offers, advertises, and performs opticianry services for the general public."