348 So.2d 338 (1977)
POSTAL COLONY CO., INC., et al., Petitioners,
v.
Reubin O'A. ASKEW, Governor, et al., Respondents.
No. Z-171.
District Court of Appeal of Florida, First District.
May 9, 1977.
Rehearing Denied August 10, 1977.
*339 C. Welborn Daniel, Clermont, for petitioners.
Robert L. Shevin, Atty. Gen., Mary Jo Carpenter, Thomas A. Harris, James D. Whisenand and Richard M. Goldstein, Asst. Attys. Gen., Tallahassee, for respondents.
SMITH, Judge.
Individual and corporate parties to proceedings of the Administration Commission, Department of Administration, here petition for review of final agency rulemaking action adopting Chapters 22F-6, 22F-7, and emergency Chapters 22 FER-75-1 through 30, Fla. Admin. Code. Sections 120.53, .68, Florida Statutes (Supp. 1976). Those rules are comprehensive land development regulations for the Green Swamp area of critical state concern, so designated in similar rulemaking a year earlier by Chapter 22F-5, Fla. Admin. Code, Chapter 380, Florida Statutes.
The timely petition for review gives this court jurisdiction to review the agency rulemaking action. Although Sections 120.54(4) and 120.56 provide administrative proceedings for consideration of rules challenged as "an invalid exercise of delegated legislative authority," failure to so proceed does not constitute failure to exhaust administrative remedies. Sections 120.54(4)(d), 120.56(4); State ex rel. Dep't of Gen. Serv. v. Willis, 344 So.2d 580, 591 (Fla. 1st DCA 1977). The APA explicitly makes agency determinations of "immediate danger, necessity, and procedural fairness" in the adoption of emergency rules judicially reviewable without an intervening administrative challenge. Sections 120.54(8)(a)3, .68, Florida Statutes (1975); Lewis v. Judges of District Court of Appeal, 322 So.2d 16, 20 n. 15 (Fla. 1975). While we have authority to remand for an evidentiary hearing on factual matters, Section 120.68(6), that is unnecessary where, as here, the questions are without disputed factual issues.
Petitioners have standing to seek judicial review of this agency action. As in City of Key West v. Askew, 324 So.2d 655 (Fla. 1st DCA 1976), the Administration Commission recognized petitioners as parties entitled to participate in the proceedings and did not by rule authorize limited forms of participation for those not eligible to become parties. Section 120.52(10)(c), Florida Statutes (1975).
Petitioners attack the Green Swamp land development regulations on constitutional and other grounds. One of the several statutory grounds is dispositive, and we reach no other. The regulations did not become effective within 12 months after July 16, 1974, the date the rule was adopted designating the area as one of critical state concern. Therefore the rule designation automatically terminated July 16, 1975, by *340 operation of Section 380.05(12), Florida Statutes (1975). The development regulations which would have become effective July 20, 1975, had the designation survived four more days, were therefore deprived of a statutory predicate and could not become effective. The Administration Commission's effort on July 15, 1975, to accelerate the effective date of the regulations by emergency rules 22 FER-75-1 through 30 was likewise ineffective. Section 120.54(8), Florida Statutes (1975).
The Green Swamp region encompasses parts of Lake, Sumter, Hernando, Pasco and Polk counties in Florida's central highlands between Tampa and Orlando. Within that region, 322,690 acres in Polk and Lake counties were designated an area of critical state concern. The area is an invaluable natural resource. In Green Swamp the ground water level of the Floridan Aquifer surfaces at 120 feet above sea level, its highest in Florida, and generates pressure which maintains free-flowing springs and rivers related to the aquifer and allows easy withdrawal of ground water in central and southern Florida. The area has the potential of providing water to 2.4 million people. It gives rise to five major rivers. It affords flood protection. There are vast recreational opportunities.
In June 1974, acting under the Florida Environmental Land and Water Management Act of 1972, Chapter 380, the Division of State Planning, Department of Administration[1] completed a final report and recommendations for the proposed Green Swamp area of critical state concern, specifying:
"... the boundaries of the proposed [area] and . .. the reasons why the particular area proposed is of critical concern to the state or region, the dangers that would result from uncontrolled or inadequate development of the area, and the advantages that would be achieved from the development of the area in a coordinated manner and recommend[ing] specific principles for guiding the development of the area." Section 380.05(1)(a), Florida Statutes (1975).
After hearings, the Administration Commission on July 16, 1974 adopted Chapter 22F-5 pursuant to the 1961 Administrative Procedure Act then in effect. Sections 120.021(2), .041(1), Florida Statutes (1973). The rule designated the Green Swamp area of critical state concern, described its boundaries, and established principles for guiding development, regulatory guidelines and other matters required by Section 380.05.
The adoption of Chapter 22F-5 on July 16, 1974, put into effect a precise timetable for perfection of land development regulations: "After the adoption of a rule designating an area of critical state concern," local governments are granted six months in which to submit to the state planning agency existing or proposed land development regulations "taking into consideration the principles set forth in the rule designating the area as well as the factors it would normally consider." Section 380.05(5), (7). The planning agency is required either to approve the regulations submitted by a local government or, within 120 days after expiration of the six-month period, to recommend proposed regulations to the Administration Commission, which is required to adopt or not within 45 days. Section 380.05(6), (8). Any regulations so adopted must be "administered by the local government as if the regulations constituted, or were part of the local land development regulations." If local administration is "inadequate to protect the state or regional interest," the state planning agency is authorized to "institute appropriate judicial proceedings to compel proper enforcement." Section 380.05(5) through (9).
The statute which controls this case is Section 380.05(12):

*341 "If, within 12 months after the adoption of the rule designating an area of critical state concern, land development regulations for the district have not become effective under either subsection (6) or subsection (8), the designation of the area as an area of critical state concern terminates. No part of such area may be redesignated until at least 12 months after the date the designation terminates."
On July 16, 1975, this statutory doomsday clock struck the rule designation of the Green Swamp area of critical state concern and, with it, the dependent land development regulations in Chapters 22F-6 and 22F-7. Those intended rules, though "adopted" by the Administration Commission on filing with the Department of State June 30, 1975, did not become "effective" until 20 days later, July 20, 1975. The 1974 Administrative Act (APA) then provided that proposed rules
"... shall be adopted on filing with the Department of State and become effective 20 days after filing, on a later date specified in the rule, or on a date required by statute." Section 120.54(11), Florida Statutes (emphasis added.)[2]
We cannot assent to the Administration Commission's argument, based on Section 120.54(11), that July 15, 1975 was the effective date "required by statute" for its Green Swamp regulations and, therefore, that the APA made the regulations effective five days earlier than "20 days after filing." We may agree that in Section 120.54(11) the phrase "or on a date required by statute" does not in context necessarily mean a date later than "20 days after filing," but the Green Swamp development regulations were not "required" by Section 380.05(12) to become effective June 15, 1975 in the sense the word "required" is used by Section 120.54(11). The APA there refers to statutes which require adoption of rules to be effectuated in all events and at a stated time. Chapter 380 does not "require" either that rules be adopted to designate the Green Swamp as an area of critical state concern or that rules be made effective to implement that designation within 12 months. Section 380.05(12) simply declares  and declares unambiguously  what shall become of such designations not so perfected within 12 months. The statute does not colorably purport to give accelerated effect to a land development regulation rule adopted in the thirteenth month after adoption of the designating rule; nor does it provide that land development regulations adopted in the eleventh hour of the twelfth month shall then take effect, the 20 day waiting period in Section 120.54(11) notwithstanding.[3] Rather, the statute provides that "the designation of the area as an area of critical state concern terminates" if the unforgiving deadline passes before "land development regulations for the district have ... become effective."
The time having passed for the required implementation of the Green Swamp designation as an area of critical state concern, no court can call it back. By Chapter 380 the legislature evinced equal interest in state policies "to guide and coordinate local decisions" concerning critical natural resources and in controlling the means by which state policies are imposed on local governments. Section 380.021, Florida Statutes (1975). One of the legislature's chief methods for controlling the potent authority of state agencies in this area was by arming Section 380.05(12) as a self-destruct mechanism for rule designations which are not timely implemented by effective development regulations. Faced with *342 so obvious a legislative purpose, we are powerless to ignore its effect. Neal v. Bryant, 149 So.2d 529 (Fla. 1962); Edgerton v. Int'l Co., 89 So.2d 488 (Fla. 1956); Cram v. Florida Ind. Comm'n, 150 So.2d 501 (Fla. 3rd DCA 1963); Fla. Ind. Comm'n v. Nat. Trucking Co., 107 So.2d 397 (Fla. 1st DCA 1958).
On July 15, 1975, meeting in apprehension of the effect of Section 380.05(12), the Administration Commission adopted the text of the Green Swamp land development regulations as emergency rules 22 FER-75-1 through 30. Emergency rules are authorized by Section 120.54(8)(a), subject to procedural guaranties, "[i]f an agency finds that an immediate danger to the public health, safety, or welfare requires emergency action... ." The statute authorizes "only that action" which is "necessitated by the immediate danger."
The Administration Commission's only finding in respect to "an immediate danger to the public health, safety, or welfare" was the following statement in its required notice of proposed emergency action:
"SPECIFIC REASONS FOR FINDING AN IMMEDIATE DANGER TO PUBLIC HEALTH, SAFETY, AND WELFARE: The necessity to give immediate effect to land development regulations previously approved by the Administration Commission for the Green Swamp Area of Critical State Concern. If such regulations are not in effect by July 16, 1975 the critical area designation could possibly terminate causing an immediate danger to the water supply for Central Florida. Adoption of these rules will avoid that possibility."
At the Commission's July 15, 1975 meeting, the Attorney General also stated there was an emergency in the "possibility of the lapse of the designation over a 4 day period, and also the need to preserve an adequate water supply for central Florida." He said termination of the designation would cause "an immediate danger to the water supply for central Florida... ."
The record is barren of evidence that, on July 15, 1975, there was immediate danger to the central Florida water supply which could be obviated only by emergency rules coextensive with the doomed permanent rules, and similarly applicable to 322,690 acres. To evidence the emergency, the Commission refers us only to the June 1974 report of the Division of State Planning. That report was intended to and did persuasively demonstrate the existence of critical state concern for the area in the decade ahead, but it cannot regarded as documenting an "immediate danger" to 322,690 acres or derivatively to the whole of central and south Florida's water supply. As that report recognized, over 90 percent of the designated area was then zoned "agricultural" or "rural conservation." The report commented that resources of regional and state concern "are becoming endangered" by uncoordinated development, predicted that by 1985 the Floridan Aquifer will be unable to accept increased demands for fresh water, and pointed to other dangers "that would result" from excessive and uncoordinated development.
Any "immediate danger" in July 1975 did not loom over the water supply but over Chapters 22F-6 and 22F-7, which because they were not filed until June 30, 1975, could not be effective until July 20. The emergency therefore was not created by rampant commercialism, the spoliation of wetlands, ineffective local control, or public indifference to the Green Swamp, but rather by an avoidable administrative failure to make the necessary regulations effective within the time allowed. When as here the legislature has clearly specified the consequence of delay, emergency created wholly by an agency's failure to take timely action cannot justify extraordinary suspensions or extensions of the statutory schedule. That principle binds the state in its most fundamental functions, such as the prosecution of crime. State ex rel. Boren v. Sepe, 256 So.2d 259 (Fla. 3d DCA 1972); Crain v. State, 302 So.2d 433 (Fla. 2d DCA 1974). That principle is recognized in the administrative law of other sovereigns. Shell Oil Co. v. FEA, 527 F.2d 1243, 1248 (Em.App. 1975); Consumers Union of U.S., *343 Inc. v. Sawhill, 393 F. Supp. 639, 640 (D.D.C. 1975), aff'd 523 F.2d 1404 (Em.App. 1975); Poschman v. Dumke, 31 Cal. App.3d 932, 107 Cal. Rptr. 596 (1973); California Ass'n of Nursing Homes v. Williams, 4 Cal. App.3d 800, 84 Cal. Rptr. 590, 85 Cal. Rptr. 735 (1970). That principle is implicit in Florida's APA.[4]
The designation made by Chapter 22F-5, Fla. Admin. Code, terminated. Chapters 22F-6 and 22F-7 did not become effective. Chapters 22 FER-75-1 through 30 are invalid. The prayer of the petition for review is granted.
RAWLS, Acting C.J., and MILLS, J., concur.

ON PETITION FOR REHEARING
SMITH, Judge.
For the first time in this proceeding, by petition for rehearing, the Administration Commission explains that an intervening rule challenge proceeding under Section 120.54(3), Florida Statutes (Supp. 1974) prevented filing of the rules with the Department of State upon approval June 17, 1975, and postponed their "adoption" until filing on June 30, 1975. The controlling statute provided that "any substantially affected person may seek an administrative determination of the validity of the proposed rule" on stated grounds and that, after the timely institution of rule challenge proceedings before the Division of Administrative Hearings, "no rule shall be adopted" by filing with the Department of State "until the hearing officer has rendered his decision." Section 120.54(4). The hearing officer upheld the proposed land development regulations for the Green Swamp area of critical state concern by order entered June 27, 1975, a Friday, and the rules were "adopted" by filing the following Monday.
We regret that these significant circumstances were not called to our attention in the briefs and oral argument and that we did not independently discover them in the record. Our consideration of them at this time is deterred by Fla.App.R. 3.14(b), which might not otherwise control so important a revelation, and by today's decision in Cross Key Waterways, Inc., v. Askew, Nos. Y-362, Y-363 and Y-430 (Fla. 1st DCA 1977), which holds unconstitutional the provision by Section 380.05(1) for designation of areas of critical state concern by use of the criteria stated in Section 380.05(2)(a) and (b). On the fundamental constitutional ground avoided by the principal opinion in this case, therefore, the Commission's designation and land development regulations for the Green Swamp area of critical state concern must fall. The petition for rehearing is
DENIED.
RAWLS, Acting C.J., and MILLS, J., concur.
NOTES
[1] The Division of State Planning, as the "agency designated by law to undertake statewide comprehensive planning," was and is the "state land planning agency" charged with Chapter 380 responsibilities. Sections 20.31(3)(e), 23.011 et seq., 380.031(16), Florida Statutes (1975).
[2] The same provision is made by renumbered Section 120.54(12), Florida Statutes (Supp. 1976), embodying 1976 APA amendments.
[3] As originally proposed to the legislature, the 20-day wait period was intended to insure "that interested persons will know of all rules before they become effective." Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, p. 17 (3/9/74); Lewis v. Judges of District Court of Appeal, 322 So.2d 16, 19 n. 6 (Fla. 1975). APA amendments in 1976 added purpose to the 20-day wait period by permitting agency changes and even summary withdrawal of adopted rules in response to objections by the legislature's administrative procedures committee. Chapter 76-131, Laws of Florida, §§ 120.54(12), .545, Florida Statutes (Supp. 1976).
[4] The legislative history of Florida's 1974 APA reveals a concern by the sponsoring Law Revision Council that "reasons and special facts" be stated in connection with emergency rules "so that this provision does not become a way around the other formalities of rulemaking." Reporter's Comments, supra n. 2, p. 16.