557 So.2d 157 (1990)
Nola LITTLE, Appellant,
v.
Gregory COLER, in His Official Capacity As Secretary, Department of Health and Rehabilitative Services, Appellee.
No. 89-2085.
District Court of Appeal of Florida, First District.
February 15, 1990.
*158 Cindy Huddleston, of Florida Legal Services, Inc., Tallahassee and Lester Wisotsky, of Greater Orlando Legal Services, Orlando, for appellant.
John S. Miller, Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.

ON MOTION FOR REHEARING
SHIVERS, Chief Judge.
We grant petitioner's motion for rehearing and substitute the following opinion.
Petitioner challenges the validity of the Department of Health and Rehabilitative Services's (HRS's) promulgation of Emergency Rules 10CER89-3, 89-4 and 89-5, Florida Administrative Weekly, Vol. 15, No. 29, pps. 3104-05 (July 21, 1989). We deny the petition.
Krajenta v. Division of Workers' Compensation, 376 So.2d 1200 (Fla. 2d DCA 1979) holds that emergency rules may be appealed directly to the district courts. Thus, we properly exercise jurisdiction over this petition where the petitioner maintains, as she does here, that the emergency rules deprived her of benefits she would have otherwise received. Such constitutes the real and substantial affect required for standing to challenge an agency rule. Professional Firefighters of Florida, Inc. v. Department of Health and Rehabilitative Services, 396 So.2d 1194 (Fla. 1st DCA 1981).
Emergency rules may be promulgated when an agency finds that an immediate danger to the public health, safety, or welfare requires emergency action. Section 120.54(9), Fla. Stat. (1987). The emergency rule must be fair and necessary. Id. Subsection (9)(a)3 requires the agency to publish the facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances.
HRS prefaced the emergency rules in this case with its reasons for finding an immediate danger to the public health, safety or welfare: "The 1989 Florida Legislative Appropriations Bill included a program reduction, or negative appropriation, of $7,864,619[1] for the Aid to Families with Dependent Children (AFDC) program based on the savings resulting from implementing the new date of entitlement for AFDC applicants." Emergency Rules 10CER89-3, 89-4 and 89-5, Florida Administrative Weekly, Vol. 15, No. 29, p. 3104 (July 21, 1989). HRS stated that without the total amount of budgeted savings being implemented immediately, the AFDC program will have insufficient funds to operate through the end of the year which would result in an inability to provide benefits to eligible families whose daily needs are dependent upon those funds. Id.
Of its reasons for concluding that the procedure used is fair under the circumstances, HRS stated that there is insufficient time to promulgate a permanent rule amendment by July 1989, which is the date the legislature assumed the savings would be implemented. Id.
*159 Emergency Rule 10CER89-3 amends Florida Administrative Code Rules 10C-1.080(10) and (11) to change the dates of entitlement and first benefit payment to the date of authorization or the 30th day from the date of application, whichever is earlier. The remaining changes engendered by Emergency Rules 89-4 and 89-5 essentially bring the applicable rules into conformity with the notion that "entitlement" instead of "application" is the starting point for benefit payments. Prior to implementation of the emergency rules, an AFDC applicant in Florida was entitled to benefits as of the date of application. Fla. Admin. Code R. 10C-1.080(10)(b).
Petitioner cites Postal Colony Company v. Askew, 348 So.2d 338 (Fla. 1977) in support of her argument that because HRS knew of the likelihood of the legislatively enacted AFDC grant reduction before its enactment, then the emergency was created wholly by HRS, and its failure to take timely action cannot justify emergency rule making. Neither Postal Colony nor any other precedent require HRS to propose rules in anticipation of the passage of legislation before it is actually enacted into law.
Petitioner asserts that the preferred mechanism for remedying administrative budget emergencies is provided by Chapter 89-51, section 9, Laws of Florida, effective July 1, 1989,[2] amending section 216.181(9), Fla. Stat. (1988 Supp.) (now section 216.181(7), Fla. Stat. (1989)). The amended statute states in pertinent part that "[t]he Executive Office of the Governor may approve changes in the amounts appropriated from state trust funds in excess of those in the approved operating budget ... when deemed to be in the best interest of the state due to an emergency situation." The permissive language used in the statute reposes discretion in the governor as to whether to make a change in a given appropriation. But even had HRS sought a gubernatorial appropriation change for its AFDC budget, such an action by the executive could doubtfully be upheld on the basis that the change was made due to an emergency situation. The Florida Legislature's General Appropriations Act and Summary Statement of Intent, page 288, indicates an amount of money not included in the appropriation to HRS economic services, current programs, on account of a modification to AFDC grant dates. Though certain to have an economic impact on current and prospective AFDC recipients, the legislature's declination to appropriate as petitioner urges does not, without more, create an emergency situation which would require HRS to seek gubernatorial appropriation changes.
In addition, although the amended statute creates a means by which an agency may seek a change in the amount of funds it was appropriated from state trust funds, it does not preclude state agencies from availing themselves of emergency rule procedures, when appropriate, to bring their programs in accord with legislative objectives.
Petitioner also asserts that section 409.085 is available to HRS to remedy any budget shortfall, but that statute simply permits the Governor to transfer any available surplus from appropriations made to social and economic programs to another program that has a budget shortfall. The transfer of funds under this statute is dependent upon an available surplus. HRS was not required to speculate that a surplus from another program would be available for transfer to the AFDC program.
Petitioner further argues that because HRS cannot legally deny benefits to eligible AFDC recipients, then a budget shortfall at the end of the fiscal year would have to be remedied and thus the emergency rules are not necessary to alleviate an immediate danger. This argument fails to consider that shifting the onset of benefit payments to the date of entitlement (the date of authorization of payment or 30 days after application, whichever is earlier) is consistent with federal law and thus a viable remedy for an imminent budget shortfall. 45 CFR section 206.10. On the other hand, no federal law requires HRS to exceed its AFDC budget and then look to the state's taxpayers to remedy the situation.
*160 Petitioner complains that HRS did not comply with Florida Administrative Code Rule 28-3.037 which pertains to emergency rule adoption. Subsection (2) of the rule states: "Unless it defeats the purpose of an emergency rule, the agency should notify major wire services and notify all affected persons before adopting an emergency rule." (emphasis added) The terms of this rule are permissive, not mandatory, and do not provide an adequate basis for judicially invalidating emergency rules even if HRS failed to comply. In addition, subsection (4) of this Rule states: "Notwithstanding subsection (2) and (3) above, the agency may use any procedure which is fair under the circumstances in the adoption of an emergency rule as long as it protects the public interest and otherwise complies with applicable statutory provisions." This subsection allows an agency much discretion in giving notice of an emergency rule. No abuse of that discretion is evident on this record.
HRS's emergency rule promulgation in this case complied with applicable legal requirements and the potential compromise to state revenue constitutes adequate cause for emergency rule. See Calder Race Course v. Board of Business Regulation, 319 So.2d 67 (Fla. 1st DCA 1975).
Petition denied.
WENTWORTH and WIGGINTON, JJ., concur.
NOTES
[1] In the 1989-90 Appropriations Act and Summary Statement of Intent, page 288, item 5.A., the entry under program reductions to HRS states: "modify aid to families with dependent children (AFDC) grant date." The amount of the program reduction indicated under the column for legislative appropriations is negative $17,476,931. That amount is the combination of funds not drawn from the State's general revenue ($7,864,619) and the amount of federal funds from the direct assistance trust fund that otherwise would have matched those State funds had the legislature decided to positively appropriate them to the program.
[2] Ch. 89-51, § 15, Laws of Fla.