884 So.2d 1148 (2004)
FLORIDA DEMOCRATIC PARTY, Petitioner,
v.
Glenda HOOD, Secretary of State of Florida, and The Florida Department of State, Respondent.
No. 1D04-4667.
District Court of Appeal of Florida, First District.
October 28, 2004.
*1149 E. Gary Early and Mark Herron of Messer, Caparello & Self, Tallahassee; Richard B. Rosenthal of the Law Offices of Richard B. Rosenthal, P.A., Miami; and Mitchell W. Berger of Berger, Singerman, Fort Lauderdale, for petitioner.
Charlie Crist, Attorney General, and John J. Rimes, III, Assistant Attorney General, Tallahassee, for respondents.
PER CURIAM.
The Florida Democratic Party (FDP) petitions for review of an emergency rule adopted by the Florida Department of State. It contends that the findings of immediate danger, necessity, and procedural fairness on which Emergency Rule 1SER04-1 is based are insufficient under section 120.54(4), Florida Statutes (2004), requiring a showing of such circumstances, and Florida case law. We deny the petition, but certify to the supreme court a question which we consider to be of great public importance.
The Department is responsible for examining and certifying electronic and electromechanical voting systems in Florida. § 101.5605, Fla. Stat. (2004). Florida's election recount procedures are governed by sections 102.141 and 102.166, Florida Statutes (2004), which create a two-stage process for recounts. A machine recount is triggered if the margin of victory is one-half of a percent or less. § 102.141(6). If the margin of victory is one-quarter of a percent or less, "a manual recount of the overvotes and undervotes cast in the entire geographic jurisdiction of such office or ballot measure" shall be conducted. § 102.166(1). "A vote cast for a candidate or ballot measure shall be counted if there is a clear indication on the ballot that the voter has made a definite choice." § 102.166(5)(a). The statute further dictates that the "Department of State shall adopt specific rules for each certified voting system prescribing what constitutes a `clear indication on the ballot that the voter has made a definite choice,'" and also shall "adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." §§ 102.166(5)(b) & (6)(d).
On April 13, 2004, the Department amended the rule governing recount procedures. As amended, Florida Administrative Code Rule 1S-2.031(7) provided:
When a manual recount is ordered and touchscreen ballots are used, no manual recount of undervotes and overvotes cast on a touchscreen system shall be conducted since these machines do not allow a voter to cast an overvote and since a review of undervotes cannot result in a determination of voter intent as required by Section 102.166(5), F.S. In this case, the results of the machine recount conducted pursuant to (5)(c) shall be the official totals for the touchscreen ballots. *1150 Rule 1S-2.031(7) was challenged in an administrative proceeding. On August 27, 2004, Administrative Law Judge (ALJ) Susan Kirkland found that the rule was an invalid exercise of delegated legislative authority, concluding that the Department did not have the authority to abolish manual recounts for touchscreen voting machines, because section 102.166(5)(b) required the Department to "adopt specific rules for each certified voting system prescribing what constitutes a `clear indication on the ballot that the voter has made a definite choice.'" The Department did not appeal that order.
On October 15, 2004, the Department issued Emergency Rule 1SER04-1. Part (6)(a) of the rule applies the following standards in a manual recount of overvotes and undervotes cast on touchscreen voting systems to determine whether there is a clear indication, as required by statute, on the ballot-image report that the voter has made a definite choice:
(a) A clear indication on the ballot that the voter made a definite choice not to cast an overvote shall be determined by the presence on the ballot image of a selection in the race or issue or of an indication of an undervote in the manner pr[e]scribed by subsection 6(b). Touchscreen voting systems do not permit a voter to cast an overvote; therefore, the canvassing board shall accept the machine recount as conclusive that there are no overvotes in the manually recounted race or issue.
(b) The clear indication that the voter has made a definite choice to undervote shall be determined by the presence of the marking, or the absence of any marking, that the manufacturer of the certified voting system indicates shall be present or absent to signify an undervote.
The specific reasons the Department of State gave for requiring the adoption of the emergency rule were as follows:
As a result of [the ALJ's rule invalidation], no statewide uniform standards for conducting manual recounts of touchscreen voting systems currently exist. The absence of a rule with applicable standards and procedures will have an adverse effect on the conduct of elections in the State of Florida. In the event that the results of a machine recount under section 102.141, Florida Statutes, trigger the requirement for a manual recount under section 102.166, Florida Statutes, counties with touchscreen voting systems would have to conduct a manual recount without applicable standards or procedures, unless an emergency rule is immediately adopted. Ad hoc, ex-post manual recount processes of touchscreen voting systems conducted on a county-by-county basis, reminiscent of the circumstances giving rise to the intensely litigated 2000 General Election, may violate the equal protection and due process clause[s] of the U.S. Constitution. See Bush v. Gore[,] 531 U.S. 98[, 121 S.Ct. 525, 148 L.Ed.2d 388] (U.S.2000).
The emergency rulemaking is necessary: 1) To put into place specified and uniform standards for conducting manual recounts of touchscreen voting systems prior to the 2004 General Election and 2) To ensure and maintain the efficiency, integrity and public confidence in the electoral process. Considering the immediacy of the election and the lack of a currently effective rule on manual recounts of touchscreen voting systems, the Department of State finds that the adoption of this emergency rule is necessary to prevent an immediate danger to the public health, safety, and welfare.
*1151 The Department asserted that the rule provided a uniform process for the 15 Florida counties using touchscreen voting systems to conduct a manual recount of overvotes and undervotes within the existing parameters and capabilities of such systems currently certified by the Department for the November 2, 2004, election.
In its petition for review, FDP argues that the emergency rule simply recasts language from the earlier invalidated rule prohibiting a manual recount of overvotes and undervotes cast on a touchscreen machine. It argues, among other things, that the Department's written reasons fail because they do not identify a sudden or unforeseeable event justifying emergency rulemaking. The fact that the general election is scheduled to be held on November 2, 2004, is, it contends, neither sudden nor unforeseeable. The only new event the Department identified was the ALJ's August 27, 2004, order finding that the previous rule had no basis in law. FDP further argues that the emergency rule does not call for the manual recount of votes to determine voter intent. FDP states that the emergency rule created two classes of Florida voters: those who are entitled to manual recounts in close elections and those who are not. We cannot agree.
If an agency finds that an immediate danger to the public health, safety, or welfare requires emergency action, the agency may adopt any rule necessitated by the immediate danger. § 120.54(4)(a), Fla. Stat. (2004). Section 120.54(4)(a)3 provides that an "agency's findings of immediate danger, necessity, and procedural fairness shall be judicially reviewable." Because of the accelerated emergency rulemaking process, judicial review takes place without an intervening administrative challenge to exhaust administrative remedies. Postal Colony Co., Inc. v. Askew, 348 So.2d 338, 339 (Fla. 1st DCA 1977). The courts generally do not concern themselves with the substantive validity of the emergency rule. See Krajenta v. Div. of Workers' Comp., 376 So.2d 1200, 1202 (Fla. 2d DCA 1979). Instead, the concern is whether the agency followed the requirements of section 120.54(4)(a).
Given the limited nature of our review, we deem the reasons given by the Department to be in compliance with the standard set forth in section 120.54(4). Initially, we disagree with the petitioner's reliance on this court's decision in Golden Rule Insurance Co. v. Florida Department of Insurance, 586 So.2d 429 (Fla. 1st DCA 1991), as support for its argument that a judgment cannot constitute an unforeseen event justifying the adoption of an emergency rule. There the adverse administrative ruling was a hearing officer's recommended order stating that the health-rate-filing requirements of the Department of Insurance were not validly delegated by statute or rule. The court, in rejecting the agency's emergency findings, noted that the department currently had in place rules setting forth filing requirements, and the emergency rule appeared to be an attempt to circumvent formal rulemaking by establishing additional criteria. Additionally, we note that this court has upheld an agency's emergency findings based upon a change in the law. Little v. Coler, 557 So.2d 157 (Fla. 1st DCA 1990) (dealing with a reduction in program appropriations for aid to families with dependent children and a legislatively mandated budget deadline).
Although we do not address the merits of the emergency rule, we note that a federal district court has rejected an equal-protection challenge in Wexler v. Lepore, No. 04-80216-CIV, ___ So.2d ___, 2004 WL 2421584 (S.D.Fla. Oct. 25, 2004). *1152 There, a suit for declaratory and injunctive relief was brought against the Secretary of State and other election officials in which it was contended that the touchscreen voting systems used in 15 of Florida's counties lacked a manual-recount procedure which was available in the remaining 52 counties using an optical-scan voting system. The plaintiffs alleged that such a differential standard violated their rights under both the due-process and equal-protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. In rejecting the challenge, the court referred to the Department's emergency rule 1SER04-1, and characterized the issue as whether the rule complied with federal mandates governing such constitutional protections. In answering the plaintiffs' argument that it was impossible to ascertain a voter's deliberate choice from the ballot-image report because there was no way to determine whether an undervote recorded by the machine reflected the voter's deliberate choice not to vote, a mistake by the voter in choosing not to vote, or a misstatement of the machine on recording an undervote, the court answered:
With respect to the issue of whether the machine records the voter's intent not to vote or a mistake by the voter, the Court concludes that the current language of the statute does not inquire into the intent of the voter in attempting to discern a legal vote; rather the statute seeks to ensure that the voter has made a definite choice. Plaintiffs use the word[s] intent and choice interchangeably. Yet, the Court finds them to be different. Prior to the 2001 amendments to the election statutes, a legal vote was determined by a clear indication of the intent of the voter. The prior version of the statute, at section 102.166(7)(b), read as follows: "If a counting team is unable to determine a voter's intent in casting a ballot, the ballot shall be presented to the county canvassing board to determine the voter's intent." See Senate Bill 1118, at 1272. Under the current standard, a legal vote is determined by a "clear indication on the ballot that the voter has made a definite choice." See id. at 1272; see also Fla. Stat. § 102.166(5)(a). When the Legislature makes a change in the statute, it is presumed to mean something by that change. The earlier "intent" standard of section 102.166(7)(b) attempted to discern, ex post, a voter's state of mind; the amended standard instead looks to whether the ballot indicates that the voter has made a definite selection.
Thus, in the context of touchscreen voting machines, the "definite choice" standard entails determining whether the voter has made a definite selection rather than ascertaining a voter's intent, i.e., did a voter intend not to make a selection or did the voter unintentionally make a mistake in using the equipment. The Court finds that by pressing the button to cast his or her ballot on the touchscreen machines, the voter is making a definite selection. In warning the voter of an undervote and allowing for a review process before the ballot is cast, touchscreen machines provide sufficient safeguards to ensure that a voter's undervote is intentional. As a result, the ballot images printed during a manual recount pursuant to the Emergency Rule reflect a voter's choices under the statutory scheme adopted by the Florida Legislature.
Id. at 21-22 (footnotes omitted). The court concluded by stating that the adoption of the rule "establishes a manual recount procedure for touchscreen voting systems, which not only meets the statutory requirements for manual recounts under *1153 Florida law, but also establishes a uniform, nondifferential standard for conducting manual recounts in compliance with equal protection guarantees."[1]
Although the issue before the court in Wexler was not identical to that before us, we find the court's analysis there highly pertinent to the issue of whether the reasons the Department gave for adopting the emergency rule were justified. The Department was clearly concerned with the fact that if no rule were in place, the same specter of confusion and inconsistency in divining a voter's intent that had attended the 2000 presidential election in Florida, and the same constitutional problems the United States Supreme Court addressed in Bush v. Gore, might yet recur in 2004. The rule appears to be the Department's difficult accommodation of the legislative dictate that it prescribe regulations for ascertaining a voter's selection as applied to the use of electronic touchscreen machines, which were designed to reduce the occasions for voter confusion and, indeed, to eliminate the opportunity for recounts altogether.
It may be, as alluded to by the dissent, that other actions than those undertaken by the Department may have been preferable, such as earlier establishment of procedures for manual recounts of votes, or, indeed, appealing the ALJ's order of invalidation. It is not our review responsibility, however, in deciding the validity of the rule, whether other means may have been more appropriate. We only look to the reasons the Department expressed and, in so doing, we are unable to say that it failed to comply with the directions of section 120.54(4).
We deny the petition for review; however, we certify to the Florida Supreme Court the following question, which we consider to be of great public importance:
WHETHER, UNDER SECTION 120.54(4), FLORIDA STATUTES (2004), THE DEPARTMENT OF STATE SET FORTH SUFFICIENT JUSTIFICATION FOR AN EMERGENCY RULE ESTABLISHING STANDARDS FOR CONDUCTING MANUAL RECOUNTS OF OVERVOTES AND UNDERVOTES, AS APPLIED TO TOUCHSCREEN VOTING SYSTEMS?
No motion for rehearing shall be entertained.
PETITION DENIED.
ERVIN and LEWIS, JJ., CONCUR; PADOVANO, J., DISSENTS with written opinion.
PADOVANO, J. dissenting.
I would grant the petition and invalidate the rule on the ground that the Department has failed to satisfy the statutory requirements for promulgating an emergency rule. If there is an emergency, it is one of the Department's own making. The Department could have established procedures for manual recounts of votes cast on touch screen voting machines several years ago.
The Department contends that there is now an emergency need for manual recount procedures, but the fallacy of this argument is revealed in the Department's own statement of the alleged emergency. *1154 The rule purports to justify emergency action with the following declaration: "As a result of [Judge Kirkland's August 27] decision, no statewide uniform standards for conducting manual recounts of touch screen voting systems currently exist." This statement is plainly incorrect. The absence of uniform standards was not caused by Judge Kirkland's order. To the contrary, the judge's order merely enforced an existing statutory mandate to establish manual recount procedures.
In 2001, the Florida Legislature enacted a revised version of section 102.166, the statute that provides for manual recounts of undervotes and overvotes in certain situations. This statute requires the Department to "adopt specific rules for each certified voting system prescribing what constitutes a `clear indication on the ballot that the voter has made a definite choice.'" § 102.166(5)(b), Fla. Stat. (2001). Despite this directive, the Department took no action until April 2004, when it attempted to promulgate a rule that would avoid manual recounts altogether. Now, in the face of an administrative order invalidating that rule, the Department maintains that the need for recount procedures is an "emergency."
Section 120.54(4), Florida Statutes sets out strict requirements for emergency rules. The purpose of these requirements is to ensure that an administrative agency will not dispense with the formal rulemaking requirements unless that is absolutely necessary. See Golden Rule Ins. Co. v. Dep't of Ins., 586 So.2d 429 (Fla. 1st DCA 1991); Florida Home Builders Ass'n v. Div'n of Labor, Bureau of Apprenticeship, Fla. Dep't of Commerce, 355 So.2d 1245 (Fla. 1st DCA 1978). We have said that there must be a "sudden or unforeseeable event to justify emergency rulemaking." Florida Health Care Ass'n v. Agency for Health Care Admin., 734 So.2d 1052, 1054 (Fla. 1st DCA 1998). The emergency rule at issue here fails to meet this test, because the need for recount procedures was not sudden or unforeseeable. It has been in the Florida law all along.
We have also said that an administrative agency's own delay cannot justify emergency rulemaking. See Florida Home Builders, 355 So.2d at 1246; Postal Colony Co., Inc. v. Askew, 348 So.2d 338, 342 (Fla. 1st DCA 1977). Yet that is exactly what happened here. The Florida Election Code was modified in 2001 to prevent a recurrence of the problems experienced in the 2000 general election, and the Department could have established a recount procedure as soon as those modifications were made. There was ample time for elections officials, party officials, voting machine experts and interested citizens to contribute to the adoption of a rule governing manual recounts. There is little time now, only because the Department decided to take no action for nearly three years and waited until April 2004 to memorialize its position in a rule dispensing with the recount procedures.
Another test of an emergency rule is whether the procedures the agency used in adopting the rule were fair to the interested parties. I cannot say that rule 1SER04-1 meets this test, either. Even if I could accept the notion that the need for the recount procedures arose for the first time when Judge Kirkland entered her order, I would have difficulty approving of the Department's subsequent conduct in adopting the rule. Although the Department asked for comments in the first ten days after the order was issued, it took no official action after that for the next thirty days. A meeting was held to discuss the recount procedures, and then on the day before early voting was set to begin, the Department promulgated the emergency rule at issue. I do not believe that this was the *1155 kind of "procedural fairness" the Legislature had in mind when it enacted section 120.54(4), Florida Statutes.
By waiting until the last minute, the Department deprived the petitioner of an opportunity to make an effective challenge to the rule. The petitioner might prevail, but, at this point, it will be difficult to offer an alternative to the rule the Department has adopted. The Department has also placed the court in the position of choosing between the lesser of evils. Here we are on the eve of a major election trying to decide whether to allow the Department to circumvent the deliberate rulemaking process with a questionable emergency rule, or to leave the election supervisors without any standards for conducting manual recounts of votes cast on touch screen voting machines. These challenges now facing the petitioner and the courts could have been avoided had the Department acted expeditiously. Because the delay was prejudicial and, in my view, inexcusable, I believe that the Department has failed to meet the "procedural fairness" requirement of section 120.54(4), Florida Statutes.
The petitioner contends that rule 1SER04-1 is a repackaged version of the Department's previous policy of avoiding manual recounts of votes cast on touch screen voting machines. The new rule defines a "ballot image" as the electronic version of the ballot, but it does not require an examination of individual ballot images to determine whether an undervote was intentional. Instead, it requires a rechecking of the "ballot image totals." Thus, the petitioner argues that the manual recount procedure amounts to nothing more than a procedure to recheck the arithmetic. If the individual votes that are used to make up the totals are altered by a computer error or by some form of tampering, the error would not show up in the recount. The "ballot image total" would be the same as it was before the recount, despite any error or alteration.
As the majority correctly notes, review of an emergency rule under section 120.54(4) is limited to procedural issues and does not ordinarily involve the validity of the rule on the merits. In the unique circumstances presented here, though, I think that it would be appropriate to determine whether the rule is a valid exercise of delegated legislative authority. This could be done by treating the petition as an appeal from an intermediate order under section 120.68(1), Florida Statutes,[2] or by the exercise of the all writs power. See State ex rel. Chiles v. Public Employees Relations Comm'n, 630 So.2d 1093 (Fla.1994); Couse v. Canal Auth., 209 So.2d 865 (Fla.1968).
An emergency rule is by definition a temporary rule, but the problem here is that, if there is any defect in the emergency rule the Department has adopted, it would be impossible to afford an adequate remedy on review of the formal rule that will take its place. If the emergency rule is an invalid exercise of delegated authority, as the petitioner contends, this court could not rectify the improper use of legislative authority on judicial review in the formal rulemaking process. The election *1156 will be over by then, and the damage will have been done.
The majority also notes that an equal protection challenge to the touch screen voting procedure has been rejected in federal court in Wexler v. Lepore, No. 04-80216-CIV, ___ So.2d ___, 2004 WL 2421584 (S.D.Fla. Oct. 2004). There, the court held that the Department's emergency rule provided a "uniform nondifferential standard" for conducting manual recounts in the counties that employ touch screen voting machines. The court concluded that the rule complied with the state statutory requirements for conducting manual recounts, but that was not the focus of the opinion and, in any event, it is not a conclusion that is entitled to deference in state court.
As the judge explained in Wexler v. Lepore, the "court's authority in this case is not to choose the preferable method of casting a ballot, but to determine whether the current procedure and standards comport with equal protection." In contrast, the ultimate issue in this case is a critical issue of state law: whether the rule does what the Florida Legislature directed the Department of State to do. If the procedures in the rule are not a valid exercise of delegated legislative authority, it will make little difference that they are uniform. The main issue addressed in Wexler v. Lepore was an issue of federal constitutional law, and the decision in that case should not be read as an endorsement of the validity of the rule under state law.
The petitioner has raised a serious argument that the emergency rule is not a valid exercise of authority delegated by the Legislature. In fact, it appears to me that the rule undermines the very point of the enabling legislation. Section 102.166(5), Florida Statutes requires the Department to "adopt specific rules for each certified voting system prescribing what constitutes a clear indication on the ballot that the voter has made a definite choice." There is no ambiguity here; the Legislature has said in simple and direct terms that the recount procedure must involve a review of the ballot to determine whether a reported undervote reflects a deliberate choice on the part of the voter. Emergency rule 1SER04-1 does not carry out this legislative directive, because it does not require the canvassing board to examine any individual ballot.
Perhaps it would be difficult or impossible to check individual ballots with the touch screen voting machines that will be used in Florida. However, I do not think that the Department's argument is strengthened in any respect by the technical difficulty that might be encountered in conducting manual recounts. The Department has a separate obligation to approve electronic voting systems to ensure that they comply with the Florida law. See § 101.5606, Fla. Stat. (2002). If the touch screen voting machines at the center of this controversy are incapable of producing a ballot or ballot image that can be recounted under the manual recount procedure required by section 102.166, they should not have been approved for use in the first instance. It is no answer now to say that the Department should be excused from the statutory recount requirements because the machines it approved will not perform the necessary functions.
Because the Department has failed to establish the existence of a legitimate emergency, I believe that the petition should be granted and that the emergency rule should be declared invalid. For these reasons, I respectfully dissent.
NOTES
[1] In a pertinent footnote, the court observed:

Federal law does not require Florida to have voting equipment which distinguishes between an intentional and unintentional undervote. Following the problems of making such determinations as to punch-card ballots used in the 2000 election, the Florida legislature decided to allow use of touchscreen paperless voting systems which eliminate the need for such determinations.
Id. at 22, n. 18.
[2] An emergency rule is the equivalent of a final order. In many cases, there would be no further regulatory action. However, in the circumstances presented here, the emergency rule is in the nature of an intermediate order. The emergency rule will expire by operation of law after 90 days, see § 120.54(4)(c), but the Department will still have a statutory obligation to adopt a permanent rule establishing procedures for manual recounts. See § 102.166(5)(b). It follows that the emergency rule in this case is merely a step along the way and that it could be properly characterized as an intermediate order under section 120.68(1).